Scott **MELTON**, Appellant,

v.

Jean K. **MELTON**, Appellee,

v.

**Jodene L. Berry, Appellee.**

**Scott Melton, Appellee,**

v.

**Jean K. Melton, Appellant,**

v.

**Jodene L. Berry, Appellant.**

**Scott Melton, Appellee,**

v.

**Jean K. Melton, Appellant,**

v.

**Jodene L. Berry, Appellee.**

Superior Court of Pennsylvania.

Argued June 17, 2003.
Filed Aug. 20, 2003.

Daniel H. Glasser, Pittsburgh, for Scott Melton.

Jean K. Melton, pro se.

BEFORE: HUDOCK, LALLY-GREEN, and CAVANAUGH, JJ.

OPINION BY LALLY-GREEN, J.:

¶ 1 In this equitable distribution/alimony case, Appellant, Scott Melton ("Husband"), appeals from the order dated April 29, 2002.[1] We reverse and remand.

¶ 2 Appellant and Jean K. Melton ("Wife") were married on September 20, 1980, separated on December 19, 1994, and divorced on December 10, 1996. The parties have no children. As of March 2001 (the time of the Master's hearing), Appellant was a 48–year–old attorney in private practice. Appellant is a 1/3 partner in his law firm, and has an imputed net income of $5,221.00 per month. Appellant has remarried and has three children with his second wife. Appellant and his new family live in the former marital residence (the "Gatehouse Drive property"). At the time of the Master's hearing, Wife was 47 years old and unemployed, with an imputed earning capacity of $700.00 per month.

¶ 3 The trial court summarized the procedural background to the case as follows:

On March 24, 2000, [after protracted litigation], the Court appointed Master Patricia Miller to resolve all pending

---

1. Wife filed two separate appeals from two different trial court orders: one dated April 29, 2002 (921 WDA 2002) and one dated May 13, 2002 (964 WDA 2002). Unfortunately, Wife filed a single *pro se* brief which was apparently intended to act both as an appellant's brief with respect to her own appeals, and as an appellee's brief with respect to Husband's appeal. To the extent that the brief acts as an appellant's brief, it violates nearly every relevant Rule of Appellate Procedure governing the content of briefs. *See,* Pa.R.A.P. 2111–2132. Moreover, the brief is largely indecipherable. These significant lapses have severely impeded appellate review. Accordingly, we are constrained to quash Wife's appeals. *See, Rabutino v. Freedom State Realty Co.,* 809 A.2d 933, 937 n. 3 (Pa.Super.2002).

We also note that the caption lists Jodene L. Berry as both an appellant and an appellee. Ms. Berry has not participated in this appeal.

economic claims of the parties including equitable distribution of marital property, Wife's claim for alimony, and Husband's claim for counsel fees. All evidence and testimony was presented to the Master over a four-day period [in March 2001], at which time Wife was represented by counsel, but she now participates in these appeals as a pro se litigant. In the master's Report, Wife was awarded 53 percent of the marital estate, and Husband 47 percent. In addition, Husband was awarded $45,000 in counsel fees from Wife for obdurate and vexatious conduct and further, Husband was awarded credits totaling $86,029 from Wife's share of the distribution. In addition, Wife was awarded alimony in the amount of $1,808 per month until she reaches the age of 62 subject to modification and possibly earlier termination as provided by applicable Pennsylvania law.[2] In order to effectuate the equitable distribution, the Master awarded certain assets to the parties.

Trial Court Opinion, 12/30/2002, at 1–2.

¶ 4 Both parties filed exceptions to the Master's report and recommendation. On April 29, 2002, the trial court dismissed all exceptions and adopted the Master's report in its entirety as the court's final order. This appeal followed.

¶ 5 Appellant raises nine issues on appeal:

A. Whether the trial court erred by awarding alimony where wife waived her right to alimony by failing to raise such claim prior to the entry of the divorce decree, and by permitting wife raise such claim nunc pro tunc where it had no jurisdiction or authority to consider such claim.

B. Whether the trial court erred in its determination of the duration and amount of alimony because it failed to give proper weight to the fact that wife had no barriers to becoming gainfully employed and that she could begin drawing on the retirement awarded to her at age 59½.

C. Whether the trial court erred in not giving husband all of the credits due him pursuant to the parties' March 1, 1996 agreement where Husband's right to receive the credits was unambiguously set forth in the agreement and the trial court impermissibly reformed the agreement thereby denying the husband's credits.

D. Whether the trial court erred by not giving Husband all of the credit due him pursuant to Judge Folino's April 8, 1997 order by finding that the October 14, 1997 consent order vacated such order when, in fact, by Wife's previous appeal, the October 14, 1997 order was itself vacated by this Court.

E. Whether the trial court erred by not awarding to Husband all of the attorney's fees requested where there was "absolutely no doubt" that Wife engaged in a pattern of obdurate and vexatious conduct and that such conduct "greatly increased" Husband's counsel fees.

F. Whether Wife waived her appeal rights as she failed to brief her exceptions and failed to file a concise statement of matters complained of on appeal.

G. Whether the trial court erred by valuing Husband's interest in his

2. Prior to the Master's award, Wife had been receiving alimony *pendente lite* (APL) in the amount of $1,808.00 per month. The Mas-

ter's report effectively converted Wife's APL award into an alimony award of the same amount.

law firm as of the date of separation where there was no evidence of waste of the asset by Husband since separation and by the time of distribution it had precipituously [sic] declined in value, through no fault of Husband.

H. Whether the trial court erred by not subtracting from the value of the gatehouse drive property awarded to Husband the brokerage fees and other closing costs, including real estate taxes due, which will be incurred on its sale where the property was actively marketed for sale and husband unequivocally intends to sell the property.

I. Whether Wife's appellate claims pursuant to 964 WDA 2002 are moot.

Appellant's Brief at 4. We will address the relevant facts and circumstances surrounding each issue in turn.

¶ 6 First, Appellant argues that the trial court lacked jurisdiction to award alimony. The basis of this argument stems from Wife's actions (or inaction) in 1997, shortly after the parties were divorced. To understand Appellant's position, a brief history of the early divorce proceedings is necessary. On December 22, 1994, Husband filed a divorce complaint. By way of this complaint and an amended complaint, Appellant raised claims of equitable distribution and counsel fees. Wife did not file a counterclaim for alimony. On November 13, 1996, Appellant filed a Notice of Intention to Request Entry of Divorce Decree.

¶ 7 The court entered a divorce decree on December 10, 1996. The decree states that: (1) the parties are divorced; (2) "Any existing spousal support order shall hereafter be deemed an order for alimony pendente lite if any economic claims remain pending"; and (3) "the court retains jurisdiction of any claims raised by the parties to this action for which a final order has not yet been entered." Docket Entry 67 (Baer, J.). The parties then prepared for a trial on the pending economic claims.

¶ 8 Four months later, on April 3, 1997, Wife asserted a counterclaim for alimony for the first time by way of an untimely answer to the divorce complaint. Husband filed a motion to strike the alimony claim, on the ground that the court lacked jurisdiction to hear any such claim so late after the divorce decree was entered. On May 5, 1997, Wife filed a "Motion to File Counterclaims Nunc Pro Tunc/Alternatively Vacate Divorce Decree." Wife conceded that she had not filed a formal counterclaim for alimony. Wife argued, however, that the court had the equitable power to allow an alimony claim because: (1) Husband was aware that Wife would make such a claim; and (2) in many pretrial documents, Husband argued about the proper length and duration of alimony.

¶ 9 On May 1, 1997, the court granted Wife's motion to file a claim for alimony *nunc pro tunc.* The court's order states, in relevant part:

At all times throughout these proceedings, including during conciliations before this court, all parties were aware that Wife was making an alimony claim. Indeed, said alimony claim and its duration was [sic] a major part of the discussions at conciliation throughout this case. Accordingly, Husband is certainly not prejudiced or surprised by said claim being included as part of the issues to be litigated at the yet unscheduled trial in this matter.

Docket Entry 65 (Folino, J.).[3] Similarly, the trial judge who disposed of Appellant's exceptions reasoned that allowing the ali-

---

**3.** The court denied Wife's request to vacate the divorce decree.

mony claim *nunc pro tunc* was equitable and was not an abuse of discretion. Trial Court Opinion, 12/30/1999, at 9 (Scanlon, J.).

■ ¶ 10 On appeal, Appellant argues that the trial court lacked the power to grant a claim for alimony *nunc pro tunc*. We agree. Under 23 Pa.C.S.A. § 3503, "whenever a decree or judgment is granted which nullifies or absolutely terminated the bonds of matrimony, all property rights which are dependent upon the marital relation, except those which are vested rights, are terminated unless the court expressly provides otherwise in its decree. All duties, rights and claims accruing to each of the parties at any time theretofore in pursuance of the marriage shall cease, and the parties shall severally be at liberty to marry again as if they had never been married." The failure to raise a claim for alimony prior to the entry of the divorce decree renders the claim waived. Pa. R.C.P. 1920.31(c); *see also,* Official Comment to Pa.R.C.P. 1920.15 ("a claim for alimony must be raised before the entry of a final decree of divorce or annulment.")

¶ 11 In the instant case, the divorce decree stated that "[a]ny existing spousal support order shall hereafter be deemed an order for alimony pendente lite if any economic claims remain pending"; and "the court retains jurisdiction of any **claims raised by the parties** to this action for which a final order has not yet been entered." (emphasis added). Appellant raised a claim for equitable distribution, but Wife did not raise a counterclaim for alimony pursuant to Pa.R.C.P. 1920.15. Thus, Appellant's claim for alimony is waived. *Justice v. Justice,* 417 Pa.Super. 581, 612 A.2d 1354, 1357 (1992) (where husband filed divorce petition and wife failed to assert any economic claims before the final decree was entered, wife waived all economic claims, including alimony), *ap-*

*peal denied,* 533 Pa. 635, 621 A.2d 581 (1993).

■ ¶ 12 The question becomes whether the trial court erred by permitting Wife to assert an alimony claim *nunc pro tunc*. In order to consider untimely-filed economic claims, the divorce decree must be either opened or vacated. *Justice,* 612 A.2d at 1357. Petitions to open the decree must be filed within 30 days. *Id., citing,* 42 Pa.C.S.A. § 5505; *see also,* 23 Pa.C.S.A. § 3332. During this 30–day period, the court holds wide discretion to modify or rescind its decree. *Justice,* 612 A.2d at 1357. "The trial court's broad discretion is lost, however, if the court fails to act within 30 days. After this 30–day period, an order can only be opened or vacated if there is fraud or some other circumstance so grave or compelling as to constitute extraordinary cause justifying intervention by the court." *Id.* (citations omitted). Wife's counsel's failure to assert a timely alimony claim does not constitute extraordinary cause. *Id.* Moreover, a general plea to economic justice will not satisfy the stringent standard set forth above. *Id.* After 30 days, the divorce decree may be vacated only as a result of extrinsic fraud, lack of subject matter jurisdiction, or a fatal defect apparent on the face of the record. 23 Pa.C.S.A. § 3332; *Justice, supra.*

¶ 13 In the instant case, Wife filed her petition to open well beyond the 30–day period for opening a decree on equitable grounds. Moreover, Wife did not allege or prove fraud, lack of subject matter jurisdiction, a fatal defect on the record, or any extraordinary cause. As noted above, a general equitable sense that Appellant would not be prejudiced does not constitute extraordinary cause. *Justice.* As Appellant notes, the only breakdown in the system appears to be Wife's counsel's failure to assert the claim. This is insuffi-

cient. *Stockton v. Stockton,* 698 A.2d 1334, 1338 (Pa.Super.1997) (mistake and inadvertence of counsel does not warrant untimely request for relief). Thus, under the facts of this case, we are constrained to conclude that the trial court erred by allowing Wife to assert an untimely alimony claim. Appellant is not entitled to alimony in this case. Accordingly, Appellant's first argument has merit.

∎ ¶ 14 The trial court clearly stated that the alimony award of $1,808.00 per month was an essential aspect of the court's attempt to effect economic justice between the parties. Trial Court Opinion, 12/30/2002, at 9. The trial court was concerned about the fact that Wife had a low earning capacity, and that the assets she received in equitable distribution were inadequate to generate a sufficient income stream. *Id.* Given that we have now vacated the alimony award, the trial court should be given an opportunity to devise a new equitable distribution scheme which would again effectuate economic justice between the parties. As such, we will vacate the entire order and remand for a new equitable distribution hearing. *Krakovsky v. Krakovsky,* 400 Pa.Super. 260, 583 A.2d 485, 489 (1990).

¶ 15 We will address Appellant's remaining issues on appeal only insofar as they raise errors of law, rather than abuses of discretion. This is so because any errors of law which remain uncorrected by this Court may be made again on remand, but it is not clear that on remand the court will exercise its discretion in the same way that it did before.

¶ 16 Appellant's second issue is that the trial court erred in calculating the duration and amount of alimony. As a result of our

disposition of Appellant's first issue, we need not address this claim.

∎ ¶ 17 Third, Appellant argues that the trial court erred as a matter of law in failing to grant him $57,253.00 in credits against Wife's share of equitable distribution. The background to this claim is as follows. The credits at issue arise from a consent agreement dated March 1, 1996. At that time, Wife was living in the Gatehouse Drive property, and Husband was living in a separate apartment. The consent agreement reads in relevant part as follows:

Husband will pay directly to Wife the sum of $4300 per month as APL commencing March of 1996.

Husband will pay the amount of the mortgage on the parties' marital residence, Gate House Drive, in the amount of $1551 per month.... The excess above $1551 per month will be credited to husband dollar for dollar at equitable distribution.

**Husband will pay real estate taxes, insurance, and the maintenance fees.**

**Husband will be entitled at equitable distribution for a dollar per dollar credit for all of those payments. They will be treated as an advance against Wife's share of equitable distribution.**

Husband will pay all expenses related to the property at 108 Colonial Drive.[4] Husband will receive credit for one-half of all the payments that he has made for the period that he has been making them for the property since the date of separation.

At the time that the property is sold, each party will then be entitled to one-half of the proceeds from the sale. Husband would then receive his credit for one-half on the expenses he had paid

---

4. Colonial Drive is a separate residence previously owned by the parties. This property

has been sold, and is not at issue in this appeal.

since separation from wife's share of proceeds.

[Any excesses, arrearages, or disputes will be resolved at equitable distribution].

Settlement Agreement Transcript, 3/1/1996, at 4–6 (emphasis added).

¶ 18 It is undisputed that for the Gatehouse Drive property, the real estate taxes totaled $907.00 per month, the homeowner's insurance totaled $120.00 per month, and the homeowner's maintenance fees totaled $90.00 per month. Appellant sought the following credits:

**Real estate taxes:** $907.00 per month for 49 months [the date of the agreement (3/1/1996) to the last month that Appellant paid real estate taxes (12/31/1999) ] = $44,443.00

**Homeowner's insurance:** $120.00 per month for 61 months [the date of the agreement (3/1/1996) to the date of equitable distribution (3/31/2001) ] = $7,320.00

**Homeowner's maintenance fees:** $90.00 per month for 61 months [the date of the agreement (3/1/1996) to the date of equitable distribution (3/31/2001) ] = $5,490.00

**TOTAL:** $57,253.00

¶ 19 The Master granted only part of Appellant's proposed credit. The Master reasoned that the agreement was premised on the idea that Wife would be living at the Gatehouse Drive property while Appellant was paying the taxes, insurance, and fees thereon. The Master reasoned that the parties did not intend for Appellant to receive credits for such costs **after Wife moved out of that property** and Appellant regained full and complete possession thereof. Moreover, the Master found that it would be inequitable for Appellant to receive a credit from Wife's equitable distribution for costs incurred after August 15, 1997. The Master concluded that such a result would essentially force Wife to subsidize Appellant's housing costs. Thus, the Master awarded a credit as follows:

**Real estate taxes:** $907.00 per month for 17.5 months (3/1/1996 to 8/15/1997) = $15,872

**Homeowner's insurance:** $120.00 per month for 17.5 months (3/1/1996 to 8/15/1997) = $2,100.00

**Homeowner's maintenance fees:** $90.00 per month for 17.5 months (3/1/1996 to 8/15/1997) = **$1,575.00**

The trial court adopted this position as well. Trial Court Opinion, 12/30/2002, at 7–8.

¶ 20 On appeal, Appellant argues that the agreement should be interpreted strictly as written: in other words, that Appellant receives credits for the Gatehouse Drive expenses even after Wife moved out of that property. Appellant notes that the agreement does not state that the credits would terminate if Wife moved out and Appellant regained possession. Appellant further argues that the Master's interpretation of the agreement impermissibly rewrites the contract. We disagree.

¶ 21 Settlement agreements between spouses are governed by the law of contract interpretation. *Osial v. Cook*, 803 A.2d 209, 213 (Pa.Super.2002). Our standards for interpreting contracts are well settled:

While addressing this issue, we are mindful that the interpretation of a contract is a question of law. Therefore, our standard of review is plenary. When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the

contract was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

*Profit Wize Mktg. v. Wiest,* 812 A.2d 1270, 1274 (Pa.Super.2002) (citations omitted). On the other hand, when the agreement is ambiguous and the intentions of the parties are not clear from the agreement itself, the court may take into account attendant circumstances to determine the parties' intent. *Osial,* 803 A.2d at 213. When an essential term is missing from the contract, the court may imply such a term "only when it is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." *Kaplan v. Cablevision of PA, Inc.,* 448 Pa.Super. 306, 671 A.2d 716, 720 (1996), *appeal denied,* 546 Pa. 645, 683 A.2d 883 (1996).

¶ 22 In the instant case, the contract at issue is not clear and unambiguous as to the duration of Appellant's credits. The contract merely states that Appellant shall pay the above-mentioned costs, and shall receive credits therefor. The contract does not state when, if ever, such credits would be terminated. Rather, the contract is silent on this essential term. Without expressly citing to the rule in *Kaplan,* it is clear that the Master did apply the rule.

Moreover, in our view, it did so properly. Given the factual circumstances surrounding the creation of the contract, and the large income disparity between the parties, it is clear that the parties intended for Appellant to subsidize Wife's housing costs, and for Appellant to recoup those costs at equitable distribution. To allow Appellant to receive credits from Wife's share of equitable distribution after Wife moved out of the home would reverse the intentions of the parties, and force Wife to subsidize Appellant's housing costs. Such a result is not only inequitable, it is inexplicable. Given that the polestar of contract interpretation is to discern the intent of the parties, we see no error of law in the Master's conclusion that the parties intended that the credits be allotted as they were. Appellant's third claim fails.[5]

■ ¶ 23 Appellant's fourth claim is that the trial court erred by failing to give him a dollar-for-dollar credit for all APL payments.[6] The background to this claim is as follows. On April 8, 1997, Judge Folino entered an order stating, *inter alia,* that Appellant shall receive a credit at equitable distribution for all APL payments made after May 1, 1997. This order also appointed a guardian *ad litem* to handle Wife's affairs.

---

5. Appellant argues that this Court must consider why Wife moved out of the marital residence in August 1997. In essence, Appellant argues that Wife acted obdurately and vexatiously, and "attempted to wreak financial ruin" upon Appellant by causing the house to rapidly deteriorate. According to Appellant, Wife was forced out of the house by way of a court order which was designed to prevent her from wasting the home entirely. Appellant's Brief at 32–33. Even assuming Appellant is correct, these facts are immaterial. The critical fact is that Appellant received full possession of the home in August 1997, and that the parties did not intend for Wife to subsidize Appellant's housing

costs after this time. Moreover, it would appear that Appellant is suggesting that the additional credits should be imposed to punish Wife for her obdurate and vexatious behavior. The contract does not support this position. We also note that Wife has already been assessed approximately $46,000.00 in counsel fees for her obdurate and vexatious behavior. We will address the claim separately, *infra.*

6. The record reflects that Appellant properly raised this issue to the trial court by way of exceptions. Unfortunately, the trial court did not address this issue in its opinion.

¶ 24 On October 14, 1997, the court entered a consent agreement as an order of court. The agreement, made between Appellant and Wife (through her guardian *ad litem*), states that it is a comprehensive and final disposition of all economic claims between the parties. Understandably, this order did not grant Appellant a credit at equitable distribution for APL, because the agreement would have avoided the need for an equitable distribution hearing altogether.

¶ 25 This Court vacated the October 14, 1997 order in an unpublished Memorandum dated April 20, 1999. *Melton v. Melton*, 738 A.2d 1063 (Pa.Super.1999), *appeal denied*, 560 Pa. 747, 747 A.2d 369 (1999). This Court reasoned that the appointment of a guardian was improper because the court failed to hold a hearing on Wife's incapacity first. According to Appellant, the October 14, 1997 order was vacated and thus void *ab initio;* therefore, the April 1997 order (granting Husband a credit for APL) should be revived.

¶ 26 The Master took the position that Appellant was entitled to a dollar-for-dollar credit only from April 8, 1997 (the date of the order granting such a credit) to October 14, 1997 (the date of the comprehensive settlement agreement). The trial court affirmed this finding, but did not explain its reasoning.

¶ 27 In our view, an order granting Appellant a dollar-for-dollar credit at equitable distribution for APL payments constitutes an error of law.

APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for that purpose, which turns on the economic resources available to the spouse. *Litmans v. Litmans*, 449 Pa.Super. 209, 673 A.2d 382, 388 (1996) (citations omitted). By granting Appellant a dollar-for-dollar credit against Wife's equitable distribution award, the court's April 1997 order would have effectively thwarted the purpose of granting APL in the first place. The April 7, 1998 order would have "leveled the playing field" during the litigation, but then would have "built in" a tremendous penalty on Wife in calculating equitable distribution. In our view, such an order does not effectuate economic justice and would not have been supportable. On remand, when calculating equitable distribution, the court is directed not to grant Appellant a dollar-for-dollar credit for APL payments.

¶ 28 In his fifth issue, Appellant argues that the court erred by failing to award all of the attorneys' fees that he requested as a result of Wife's obdurate and dilatory behavior. Husband had asked for over $90,000.00 in attorneys' fees. The Master found that Wife acted obstreperously and that her conduct caused Husband to incur unnecessary legal fees. The Master found that an award of $44,500.00 to Appellant was appropriate. The trial court agreed.

¶ 29 We review the trial court's award of attorneys' fees for an abuse of discretion. *Verholek v. Verholek*, 741 A.2d 792, 795 (Pa.Super.1999), *appeal denied*, 563 Pa. 665, 759 A.2d 388 (2000). Given that the trial court's award is entirely discretionary, and that we are remanding for a new equitable distribution hearing, we need not address this issue at this time. On remand, the trial court is free to award or recalculate attorneys' fees within the bounds of its discretion in light of all of the circumstances at the time of equitable distribution.

¶ 30 Appellant's sixth issue is that Wife waived her appeal rights by failing to brief her exceptions and by failing to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925. This issue is moot, in light of the fact that we have quashed Wife's appeals.[7]

¶ 31 Appellant's seventh issue is that the trial court erred by valuing Husband's interest in his law firm as of the date of separation, rather than the date of equitable distribution. Appellant argues that the value of Husband's law firm had declined significantly, through no fault of his own, between the date of separation and the date of equitable distribution.

¶ 32 The valuation of an asset such as a business partnership is discretionary with the Master and the trial court. *Gaydos v. Gaydos*, 693 A.2d 1368, 1371 (Pa.Super.1997). Given that we are remanding for a new equitable distribution hearing, we need not address this issue at this time. On remand, the Master and the trial court are free to re-evaluate the asset within the bounds of their discretion.

¶ 33 In his eighth issue, Appellant argues that when the court awarded Husband the value of the marital residence, the court should have deducted future brokerage fees and closing costs in light of the fact that Husband unequivocally intended to sell the property. We review valuation of marital assets for an abuse of discretion. *Gaydos*. As with the other discretionary issues raised on appeal, we need not address this issue at this time.

¶ 34 Finally, Appellant argues that Wife's appellate issues pertaining to 964 WDA 2002 are moot. This claim is itself moot, given that we have quashed Wife's appeals.

¶ 35 In summary, we remand for a new equitable distribution hearing. On remand, alimony may not be awarded, and Husband may not receive a dollar-for-dollar credit for APL. Otherwise, the Master and the trial court are free to adopt their prior findings, or to issue new findings, within the bounds of their discretion and consistent with this Opinion.[8]

¶ 36 Order vacated. Remanded for further proceedings. Jurisdiction relinquished.

---

7. *See,* note 1, *supra.*

8. We recognize that this Court's order perpetuates what is already a protracted and contentious dispute. We hope that the parties may soon settle their differences amicably. Moreover, we urge Wife to find competent counsel. It is clear to this Court that proceeding *pro se* does not serve Wife's legal or financial interests, nor does it serve Wife's interest in settling this matter.