J-A29037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

DONA C. LISCHNER,             :        IN THE SUPERIOR COURT OF
                                  :             PENNSYLVANIA
         Appellee          :
                                  :
         v.                       :
                                  :
CHARLES M. LISCHNER,         :
                                  :
         Appellant        :         No. 1975 WDA 2014

Appeal from the Order November 25, 2014
in the Court of Common Pleas of Allegheny County,
Family Court Division, No. FD 12-006532-009

BEFORE: FORD ELLIOTT, P.J.E., BOWES and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:         **FILED DECEMBER 23, 2015**

Charles M. Lischner ("Husband"), *pro se*,[1] appeals from the Order affirming the Master's Report and Recommendation and equitably distributing the marital property of Husband and Dona C. Lischner ("Wife"). We affirm.

The parties married on July 3, 1980, and separated on December 16, 2009.[2] In March 2012, Wife filed a Complaint in Divorce, after which Husband filed a Complaint for Support. The trial court described what next transpired as follows:

> The parties appeared for a support hearing in front of a hearing officer on May 16, 2012. On May 16, 2012, an Order of Court for spousal support was entered, which required Wife to pay Husband the guideline support amount of $784.00 per month,

---

[1] Husband appeared *pro se* throughout the underlying proceedings.

[2] Husband and Wife have two adult children.

plus a mortgage deviation of $447.00 per month, for a total of $1,231.00 per month. Said Order required Husband to pay the mortgage on the marital residence, as a mortgage deviation was reflected in the Order. The Order also required the parties to list the marital residence for sale at $209,500.00 and to follow the realtor's recommendations regarding reducing the listing price.

Trial Court Opinion, 2/19/15, at 2.

Wife filed an Amended Complaint in Divorce on November 13, 2012, including a count seeking the equitable distribution of the parties' marital assets. Subsequently, the trial court assigned the matter to a Special Master, and directed that the Master take evidence and issue a report and recommendation as to two issues: (1) the date of the parties' separation; and (2) Wife's claim for equitable distribution of the parties' marital property. Trial Court Order, 8/23/13, at 1; Master's Report and Recommendation, 3/11/14, at 1.

On March 11, 2014, the Master issued her Report and Recommendation. The Master first found the parties' date of separation to be December 16, 2009. Master's Report and Recommendation, 3/11/14, at 2. Regarding the equitable distribution of marital property, the Master found as follows:

There is limited marital property subject to distribution. However, the parties dispute the value of the marital residence, which is the largest asset in the marital estate. This property, located at 455 Marlin Drive, Mt. Lebanon, PA[,] is a three bedroom, [two-]bathroom[] home. Neither party had the house appraised for purposes of this hearing. Wife is relying on the 2014 Allegheny County Assessment being $165,000 as her value for the house. Husband is relying on a 2009 appraisal that was done incident to the parties['] refinancing of their mortgage,

- 2 -

being $195,000. Wife testified that the house is in need of many repairs and that [] will [a]ffect [its] potential value in any future sale. Husband testified that the appraisal done in 2009 addressed those problems in determining the fair market value at that time. The master notes that the *fair market value* of the property on the 2014 Allegheny County Assessment is $183,500. The Master finds that the fair market value is the more appropriate valuation for equitable distribution purposes and is splitting the difference between the 2009 appraisal and the 2014 fair market value. Therefore, the Master finds the fair market value of this home to be $189,250. The Master is then deducting **$13,248** (17% closing costs) and the outstanding mortgage (**$106,744.86**) for an equity value of **$81,181.14**.

*Id.* at 2-3 (footnotes omitted, emphasis in original).

After detailing the assets in the possession of each party, the Master found the total value of the marital estate to be $164,020.57.[3] *Id.* at 3. Based upon her review of the factors set forth in the Divorce Code, the Master recommended an equal division of the value of the marital assets. *Id.* The Master recommended that Wife transfer $29,783.45 to Husband. *Id.* at 5. The Master further recommended that Husband transfer title to the marital residence to Wife, so that she could obtain the necessary funds by means of a mortgage of the residence. *Id.*

The trial court entered a Decree in Divorce on May 1, 2014. The Decree included the following language, which appears to bifurcate the parties' economic claims:

---

[3] The Master found no evidence of dissipation by either party. Master's Report and Recommendation, 3/11/14, at 4. In addition, the Master found that "[n]either party has any significant sole and separate estate." *Id.*

The [trial c]ourt retains jurisdiction of any claims raised by the parties to this action for which a final order has not yet been entered.

Any existing spousal support order shall hereafter be deemed an order for alimony *pendente lite* if any economic claims remain pending.

Divorce Decree, 5/1/14.[4]

On July 18, 2014, Husband filed a "*Nunc Pro Tunc* Motion for the Disputed Equitable Distribution and Appraisement filed April 1, 2014." On July 22, 2014, Husband filed "Exceptions *Nunc Pro Tunc*" to the Master's Report and Recommendation. Ultimately, on July 22, 2014, Husband filed a Petition for Extension of time to file Exceptions *Nunc Pro Tunc*. By an Order dated August 18, 2014, the trial court granted Husband's Motion, stating that "[t]he Exceptions[,] which were to be filed by April 7, 2014[,] shall now be deemed to be timely filed …." Trial Court Order, 8/14/14, at 1.

The trial court scheduled a hearing on Husband's Exceptions for September 9, 2014. When Husband failed to appear for the hearing, the trial court entered an Order dismissing Husband's Exceptions. Trial Court Order, 9/9/14. Upon a subsequent Motion filed by Husband, the trial court reinstated Husband's *Nunc Pro Tunc* Exceptions. Trial Court Order, 9/18/14.

After oral argument and the submission of briefs, the trial court entered an Order overruling Husband's Exceptions, and requiring Husband to

---

[4] Contrary to the arguments of Wife and the conclusion reached by the trial court, the trial court's Order appears to have bifurcated the parties' economic claims. Thus, we decline to quash Husband's appeal as untimely filed.

pay Wife $350 in attorney fees. On November 25, 2014, the trial court entered an Order affirming the Master's Report and Recommendation as a Final Decree. Trial Court Order, 11/25/14. Thereafter, Husband filed the instant timely appeal.

In an Order dated December 16, 2014, the trial court directed Husband to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal within 21 days. However, this Order was not filed or docketed. A notation on the docket, dated February 19, 2015, states that the Order was "placed in file without being entered." Trial Court Docket, 2/19/15. Husband filed a Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal on December 29, 2014, and a *nunc pro tunc* Concise Statement on February 13, 2015. On February 19, 2015, the trial court filed its Opinion addressing the claims raised by Husband.

Husband, *pro se*, now challenges the trial court's Order overruling his Exceptions to the Master's Report and Recommendation. Brief for Appellant at 4.[5] Specifically, Husband claims that the trial court improperly

(1) denied him alimony *pendente lite* from May 1, 2014, until November 24, 2014, ***see id.*** at 4;

(2) denied his claim for alimony, ***see id.*** at 5;

(3) failed to apply a "rent differential" for the months of March and April of 2013, ***see id.***;

---

[5] In his appellate brief, Husband did not include a statement of questions involved, as required by Pa.R.A.P. 2116(a). However, we decline to quash Husband's appeal on this basis.

(4)  determined the value of the marital residence, *see id.* at 6;

(5)  deducted closing costs from its determination of the fair market value of the marital residence, *see id.* at 7;

(6)  calculated the date of separation value of the parties' PNC Bank account, where the court had failed to include a loan reimbursement that was deposited into the PNC Bank account, *see id.* at 7;

(7)  calculated the amount in Husband's Bank of America checking account by including Husband's severance pay and failing to credit Husband for his July 2013 mortgage payments, *see id.* at 8; and

(8)  failed to consider the tax consequences with respect to Husband's pension, *see id.* at 9.

*See* Trial Court Opinion, 2/19/15, at 6-7 (setting forth the claims presented in Husband's Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal).  In his *nunc pro tunc* Concise Statement,  Husband additionally claims that Wife's counsel improperly failed to distribute funds from the escrow account after the sale of the marital residence.  Concise Statement *Nunc Pro Tunc*, 2/13/15.

We apply the following standard in reviewing an equitable distribution order:

> A trial court has broad discretion when fashioning an award of equitable distribution.  Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure.  We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence.  This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of

partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009).

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Morgante v. Morgante*, 119 A.3d 382, 387 (Pa. Super. 2015) (citation omitted).

Upon review of the parties' briefs, and the record certified to this Court on appeal, we conclude that the trial court concisely addressed Husband's first through eighth claims, and correctly concluded that they lack merit. Trial Court Opinion, 2/19/15, at 7-12. The trial court's findings are supported by the evidence of record and its legal conclusions are sound. *See id.* We therefore affirm on the basis of the trial court's Opinion with regard to these claims. *See id.*

Husband finally claims that Wife's counsel, Sandra Jean MacPherson, Esquire ("Attorney MacPherson"), violated a trial court order by failing to disburse funds from the escrow account, upon the sale of the marital residence. Brief for Appellant at 9. Our review of the record discloses that

Husband first raised this claim in his Concise Statement *Nunc Pro Tunc*, filed on February 13, 2015. Because our appellate rules are clear that an issue cannot be raised for the first time on appeal, we cannot grant Husband relief on this claim. *See* Pa.R.A.P. 302(a) (providing that a claim cannot be raised for the first time on appeal).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2015

Circulated 12/03/2015 04:14 PM

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

DONA LISCHNER,

        Plaintiff,

    v.

CHARLES M. LISCHNER,

        Defendant.

No.: FD 12-006532-009

**OPINION OF COURT**

BY:

The Honorable Alexander P. Bicket
440 Ross Street
Suite 5069
Pittsburgh, PA 15219

COPIES TO:

**Counsel for Plaintiff:**

Sandra Macpherson, Esquire
319 Maryland Avenue, Suite D
Oakmont, PA 15139

**Pro Se Defendant:**

Charles M. Lischner
1335 Cedar Blvd., Apt. B
Pittsburgh, PA 15228

FILED

15 FEB 19 AM II: 17

DEPT. OF ... RDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

DONA LISCHNER,                                    No.: FD 12-006532-009

      Plaintiff,

      v.

CHARLES M. LISCHNER,

      Defendant.

## OPINION

BICKET, J.                                         February 19, 2015

On November 26, 2014, an Order of Court was entered which adopted the Master's Report and Recommendation dated March 11, 2014 as a final decree in this matter. Defendant appeals said Order. For the reasons set forth below, Husband's appeal should be quashed, or, in the alternative, the Order should be affirmed.

### Jurisdictional Issue

On March 11, 2014, Special Master Peggy Lynn Ferber issued a Report and Recommendation disposing of the only pending economic claim filed in this divorce action, Plaintiff's claim for equitable distribution. Neither party filed timely exceptions to the Report and Recommendation. Accordingly, on May 1, 2014, a Decree in Divorce was entered. At the time the Decree was entered, no economic claims were outstanding. By Order of Court dated August 14, 2014, this Court granted Defendant's request to file exceptions to the Master's Report and Recommendation *nunc pro tunc.* At the time this Court granted Defendant's request, it was unaware that a final Decree in Divorce had already been entered on May 1, 2014. Pursuant to the reasoning contained in <u>Melton v. Melton</u>, 831 A.2d 646, 651 (Pa. Super. 2003), this Court, therefore, did not have

jurisdiction to grant Defendant's Petition to file exceptions *nunc pro tunc*, because well over 30 days following entry of the Decree in Divorce had passed. As such, this Court believes that the Order dated August 14, 2014 and everything that occurred thereafter was *void ab initio*. If the Superior Court agrees with this Court, then Defendant's appeal should be quashed, as Defendant did not timely appeal the Decree in Divorce entered on May 1, 2014. Assuming *arguendo* that the Superior Court does not agree, the Court will address the merits of Defendant's appeal.

## Background

The salient procedural history in this matter is as follows: The parties, Charles M. Lischner (hereinafter, "Husband") and Dona Lischner (hereinafter, "Wife"), were married on July 3, 1980. The parties separated on December 16, 2009. On March 5, 2012, Wife filed a one-count Complaint for Divorce, requesting a decree in divorce. On April 9, 2012, Husband filed a Complaint for Support, requesting spousal support only. The parties appeared for a support hearing in front of a hearing officer on May 16, 2012. On May 16, 2012, an Order of Court for spousal support was entered, which required Wife to pay Husband the guideline support amount of $784.00 per month, plus a mortgage deviation of $447.00 per month, for a total of $1,231.00 per month. Said Order required Husband to pay the mortgage on the marital residence, as a mortgage deviation was reflected in the Order. The Order also required the parties to list the marital residence for sale at $209,500.00 and to follow the realtor's recommendations regarding reducing the listing price.

On May 17, 2012, Wife filed her Section 3301(D) Affidavit of Consent. On September 5, 2012, Wife presented a Motion for Special Relief, averring that Husband refused to follow the recommendations of the realtor, which caused the parties to miss out on a potential sale of the marital residence. The issue was referred to a hearing officer. On November 1, 2012, the hearing officer issued a recommendation which set forth the parties' agreement regarding the marital

2

residence and spousal support. The November 1, 2012 recommendation provided, *inter alia*, that Husband would vacate the marital residence prior to February 1, 2013; that, as of February 1, 2013, the spousal support order issued May 16, 2012 would be reduced to $784.00 per month to reflect a termination of the mortgage deviation; and that, as of February 1, 2013, Wife would be fully responsible for paying the mortgage on the property, *"contingent upon Husband moving out of the marital residence pursuant to the above terms and his conveyance of his interest in the property to husband."* (Emphasis added). The recommendation also required Wife to buy out Husband's interest in the property and pay him 50% of the equity, less the mortgage, realtor's commission, and closing costs. Finally, the recommendation required Wife to file an amended complaint in divorce raising a count of equitable distribution within seven days. On November 13, 2012, Wife filed an Amended Complaint for Divorce, including an additional count for equitable distribution. Pursuant to an Order of Court dated November 21, 2012, the Hearing Officer's November 1, 2012 recommendation became a final order.

Thereafter, Husband apparently did not, as ordered, move out of the marital residence prior to February 1, 2013. On April 3, 2013, following a judicial conciliation, the parties entered into a Consent Order of Court which required Husband to vacate the marital residence by May 1, 2013; entitled Wife to move into the marital residence when Husband vacated same; required Wife to be responsible for the mortgage payments on the residence when Husband vacated same; and required Wife to refinance the marital residence to remove Husband's name from the existing mortgage and to place the additional funds from the refinance in escrow in order to buy out Husband's interest in the marital residence. A second Order was entered on April 3, 2013, scheduling a second judicial conciliation for August 13, 2013.

Following the August 13, 2013 judicial conciliation, by Order of Court dated August 22, 2013, the matter was referred to the Court's permanent

3

Special Master to issue a report and recommendation with respect to the pending claims. A one-day hearing occurred before Special Master Peggy Lynn Ferber on February 10, 2014. Following the one-day hearing, the Master issued a comprehensive Report and Recommendation dated March 11, 2014, which contained several factual findings, divided the parties' marital estate on a 50/50 basis, and set forth the method of distribution. Neither party filed timely exceptions to the Master's Report and Recommendation.

On April 1, 2014, Husband filed a Counter-Affidavit under Section 3301(D) of the Divorce Code.[1] On April 4, 2014, Wife filed a Notice of Intention to Request Entry of Divorce Decree and a Praecipe to Transmit Record.[2] On May 1, 2014, a Decree in Divorce was entered.[3] On May 2, 2014, the spousal support order that was currently in effect was administratively terminated effective May 1, 2014.

On July 14, 2014, apparently after Husband appeared at the Domestic Relations Office requesting that his spousal support be reinstated, an Order was administratively entered that referred the matter to a hearing officer to address whether the spousal support order was properly terminated. On July 18, 2014, Husband filed with the Department of Court Records a document titled "*Nunc Pro Tunc* Motion for Disputed Equitable Distribution and Appraisement Filed April

---

1. Attached to Husband's Counter-Affidavit was a copy of a letter that Husband apparently had sent to Master Ferber, which set forth several issues which Husband believed the Master decided in error.

2. In his Counter-Affidavit, Husband checked option 2(b), which stated "I wish to claim economic relief which may include alimony, division of property, lawyer's fees or expenses or other important rights." The Counter-Affidavit specifically included a paragraph which stated, "I understand that in addition to checking (b) above, I must also file all of my economic claims with the Department of Court Records in writing and serve them on the other party. If I fail to do so before the date set forth on the Notice of Intention to Request Divorce Decree, the Divorce Decree may be entered without further notice to me, and I shall be unable thereafter to file any economic claims."

3. The Decree included two paragraphs, which stated: "The Court retains jurisdiction of any claims raised by the parties to this action for which a final order has not yet been entered" and "(a)ny existing spousal support order shall hereafter be deemed an order for (continued...)

4

01, 2014." On July 22, 2014, Husband also filed a document titled "Exceptions *Nunc Pro Tunc* – Master Ferber Report dated 3-11-2014." Husband never presented either of these documents to this Court for leave to file same. Nevertheless, the exceptions clerk scheduled argument on Husband's Exceptions for September 9, 2014. Thereafter, on August 14, 2014, Husband finally presented to this Court a "Petition for Extension of Time to File Exceptions *Nunc Pro Tunc*", requesting leave to file exceptions to the Master's Report and Recommendation. This Court, as mentioned above, was unaware that a Decree in Divorce had already been entered on May 1, 2014 and neither party brought this fact to the Court's attention. Therefore, this Court granted Father's Petition from the bench and scheduled argument on the exceptions for September 9, 2014.

On August 27, 2014, the parties appeared in front of Hearing Officer Bingman to address whether the spousal support order was properly terminated or if it should have continued as *alimony pendente lite*. That same day, Hearing Officer Bingman issued a recommendation dismissing Husband's request for continuance of the support order. Hearing Officer Bingman determined that Husband failed to properly file a claim for alimony/APL prior to entry of the Decree in Divorce, which was entered on May 1, 2014. As such, she determined that spousal support was properly terminated. Hearing Officer Bingman's recommendation was made final by Order of Court dated August 28, 2014.

Thereafter, Husband failed to appear at argument on his exceptions. Accordingly, his exceptions were dismissed by Order of Court dated September 9, 2014. Husband then presented a Petition for Special Relief on September 18, 2014, requesting that his exceptions be reinstated. By its Order dated September 18, 2014, this Court reinstated Husband's exceptions and required Husband to pay Wife's attorney fees for his failure to attend the previously

(...continued)
alimony *pendente lite* if any economic claims remain pending."

5

scheduled argument on exceptions. Following argument on Husband's exceptions, by its Order dated November 6, 2014, this Court overruled all of Husband's exceptions and required Husband to pay Wife's attorney $350.00 in attorney's fees. On November 26, 2014, a "final" Order of Court was entered, which adopted the Master's Report and Recommendation dated March 11, 2014 as a final decree in this matter. Husband filed a Notice of Appeal to the November 26, 2014 Order on December 5, 2014.

On December 29, 2014, pursuant to this Court's request, Husband filed his Concise Statement of Matters Complained of on Appeal. Husband's Statement is neither clear or concise, nor is it in compliance with Pa. R.A.P. 1925(b)(4). Nevertheless, the Court believes it can summarize Husband's Statement as follows:

1.) The spousal support order was improperly terminated on May 1, 2014. Instead, spousal support or APL should have continued from May 1, 2014 until November 24, 2014, when the final decree was entered;

2.) Husband is entitled to alimony;

3.) Husband is entitled to a "rent differential" for the months of February, March, and April of 2013;

4.) The Master erred in determining the value of the marital residence;

5.) In determining the net equity in the marital residence, the Master erred by deducting $13,248.00 as an estimate for closing costs from the fair market value of the marital residence;

6.) The Master erred in calculating the date of separation value of the marital PNC Bank Account by failing to include a loan reimbursement that was deposited into said account;

7.) The Master erred in calculating the amount in Husband's Bank of America checking account by

6

erroneously including Husband's severance pay and failing to give Husband credit for the mortgage payments he made until July 2013; and

8.) The Master failed in considering the tax consequences with respect to Husband's pension.

## Discussion

### 1. Husband's Request for Spousal Support or APL from May 1, 2014 to November 26, 2014

With respect to Husband's first issue complained of on appeal, the spousal support order was properly terminated effective May 1, 2014, as a final Decree in Divorce was entered on that date and there were no economic claims then pending. Assuming *arguendo* that Husband's request to file exceptions *nunc pro tunc* was properly granted on August 14, 2014, then, technically, economic claims would have been considered pending from May 1, 2014 until November 26, 2014. If that is the case, Husband has a legitimate argument that spousal support should have continued as alimony *pendene lite* until the date that a "final" decree is entered. See <u>DeMasi v. DeMasi</u>, 597 A.2d 101, 104 (1991)(APL will continue throughout an appeal on matters of equitable distribution). Although Husband may have a legitimate argument, this Court does not believe that it would be fair or equitable to permit Husband to continue to receive support for seven-plus months following entry of the Decree in Divorce based only upon his late filing of meritless exceptions.

### B. Husband's Request for Alimony

The Master specifically addressed Husband's request for alimony in her Report and Recommendation. The Master stated,

> Husband attempted to assert a claim for on-going alimony, but other than his initial Complaint for Support, Husband filed no Petition raising *any* claims under the Divorce Action. Therefore, the Master advised Husband that the issue of alimony was moot and therefore not before the Master.

7

Master's Report and Recommendation, p. 2 (emphasis added in original). Although the Master specifically addressed Husband's request for alimony in her Report and Recommendation, Husband failed to file an exception to this finding pursuant Pa. R.C.P. 1920.55-2(b). Therefore, Husband has waived this issue. Pa. R.C.P. 1920.55-2(b); McGinley v. .McGinley, 565 A.2d 1220, 1226 (Pa. Super. 1989)(any issue not raised in exceptions is deemed waived on appeal); Sipowicz v. Sipowicz, 517 A.2d 960, 963 (Pa. Super. 1986)(any issue not timely raised in exceptions is deemed waived on appeal, even if the trial court addresses the issue on its merits). In any event, the Master was correct in her finding. At no point during the pendency of this matter did Husband file a counterclaim or petition raising a claim for alimony. Although Husband checked box 2(b) in his Section 3301(d) Counter-Affidavit, this was not enough to preserve a claim for alimony. The language contained in the Section 3301(d) Counter-Affidavit, which Husband signed and filed, specifically made Husband aware that checking box 2(b) was not enough to preserve a claim for alimony. Because Husband never raised a claim alimony pursuant to Pa. R.C.P. 1920.15, his claim for alimony is waived. Melton v. Melton, 831 A.2d 646, 651 (Pa. Super. 2003).

## C. **Rent Differential**

Husband's third matter complained of on appeal is without merit. As the Order of Court dated November 21, 2012 made quite clear, the mortgage deviation of $447.00 per month awarded to Husband was to terminate effective February 1, 2013. As of that date, Wife was only required to pay Husband $784.00 per month, regardless of whether Husband moved out of or remained in the marital residence. That Order, as well as the Consent Order dated April 1, 2013, provided that Wife was to be responsible for the mortgage only upon Husband moving out of the residence. Husband continued to reside in the residence after February 1, 2013. Thus, Husband was required to pay the mortgage the months he remained in the residence after February 1, 2013, and

8

Wife was only required to pay Husband $784.00 per month during these months. Husband was not entitled to any "rent differential" or mortgage payments from February 1, 2013 to May 1, 2013.

## D. **Valuation of Marital Residence**

In her Report and Recommendation, the Master discussed how she valued the marital residence:

> Neither party had the house appraised for purposes of this hearing. Wife is relying on the 2014 Allegheny County Assessment being $165,000 as her value for the house. Husband is relying on a 2009 appraisal that was done incident to the parties refinancing of their mortgage, being $195,000. Wife testified that the house is need of many repairs and that will effect is (sic) potential value in any future sale. Husband testified that the appraisal done is 2009 addressed those problems in determining the fair market value at that time. The Master notes that the *fair market value* of the property on the 2014 Allegheny County Assessment is $183,500. The Master finds that the fair market value is the more appropriate valuation for equitable distribution purposes and is splitting the difference between the 2009 appraisal and the 2014 fair market value. Therefore, the Master finds the fair market value of this home to be $189,250.

Master's Report and Recommendation, p. 2-3 (emphasis added in original). The Master did not abuse her discretion in determining the fair market value of the marital residence.

## E. **Closing Costs**

In determining that the net equity value of the marital residence was $81,181.14, the Master deducted the estimated closing costs, $13,248.00 (i.e. 7%), and the outstanding mortgage, $106,744.85, from the fair market value of the residence. Even though there may not have been any closing costs, the Master did not abuse her discretion in deducting estimated closing costs from the fair market value in arriving at the net equity value. In both his Brief in

9

Support of Exceptions and his Amended Brief in Support of Exceptions, Husband cited to no authority which would suggest that the Master abused her discretion or erred as a matter of law in including the estimated value of closing costs in her valuation.

## F. Date of Separation Value of the PNC Account

The Master set the date-of-separation value of the PNC Bank Account at $1,000.00. Master's Report and Recommendation, p. 3. The Master indicated that, shortly before separation, the account balance was actually higher than $1,000.00. Id. at p. 3 n. 3. However, the reason it was higher was that the balance reflected a school loan reimbursement. Id. Upon review of the record, it appears that Wife had paid up front for graduate school during the marriage and that this payment was refunded into the PNC Account just prior to separation, because Wife received a PNC student loan, which was paid directly to the school. Transcript of Testimony ("T.T.") at p. 19, 111-113. The Master did not abuse her discretion by excluding this refund from the value of the PNC Bank Account, as this refund canceled out the student loan debt, which was acquired during the marriage, and which still had to be paid back.

## G. Date of Separation Value of Bank of America Checking Account

The Master determined the date-of-separation (December 16, 2009) value of the Bank of America checking account was $15,595.27. Master's Report and Recommendation, p. 3. The record reveals that the balance reflected in this account as of October 23, 2009 was $7,595.27. T.T., p. 106.[4] Husband received severance pay in the amount of $8,000.00 or $9,000.00 in December of 2009, just prior to the date of separation, and deposited this amount into his Bank of America Checking Account. Id. at p. 138-140. Because the Master did not have an account statement for December of 2009, it appears she simply added

---

4. The Master erroneously stated that the balance was $7,395.27. Master's Report and Recommendation, p. 3 n. 6.

10

$8,000.00 to the account balance reflected on October 23, 2009 ($7,595.27) to determine the date-of-separation value of $15,595.27. This was not an abuse of discretion.

With respect to not receiving credit for mortgage payments, nothing in the record suggests Husband is entitled to credit for any mortgage payments he made following separation, if indeed he made them. The record actually reflects that Wife paid her share of the mortgage following the parties' separation. T.T. at p. 140-143. Furthermore, pursuant to the November 21, 2012 Order of Court, Husband was required to be solely responsible for the mortgage, as he lived in the residence and Wife was required to pay Husband a mortgage deviation. Wife was not required to assume the mortgage until Husband vacated the residence. There is nothing in the record to suggest when Husband vacated the residence or that he made mortgage payments after he vacated the residence. With respect to the $5,000.00 credit Husband requests, Husband testified that he used $5,000.00 from the Bank of America Checking account to make a payment on the mortgage principal so as to reduce it. However, as the Master noted, "(h)e had no proof of that payment but testified that he is awaiting copy of a check/statement which would evidence that payment." Master's Report and Recommendation, p. 3 n. 7. The Master gave Husband until February 14, 2014 to provide her with this proof. Id. The Master stated, "Husband advised the Master via letter dated 2/16/14 that he made that payment several months prior to the parties' separation. Therefore, no credit is due to Husband." Id. The Master was correct in her determination and did not err in failing to give Husband credit for this payment or any of the payments Husband made or might have made towards the mortgage.

## H. Retirement Accounts Tax Consequences

Husband has waived this issue by failing to properly raise it in his exceptions. Pa. R.C.P. 1920.55-2(b); McGinley v. .McGinley, 565 A.2d 1220, 1226 (Pa. Super. 1989)(any issue not raised in exceptions is deemed waived on

11

appeal).

For the reasons set forth above, Husband's appeal should be quashed. In the alternative, the Order of Court dated November 26, 2014 should be affirmed.

By the Court:

_____ J.

Alexander P. Bicket