In re ESTATE OF Bruce E. JOHN-
SON, Deceased, Appeal of Val-
erie S. Gaydos, Executor.

In re Estate of Bruce E. Johnson,
Deceased, Appeal of Deborah
Rogers Johnson.

Superior Court of Pennsylvania.

Argued Nov. 18, 2008.

Filed March 27, 2009.

Donald M. Lewis, III, Harrisburg, for Gaydost.

William H. Nast, Harrisburg, for Johnson.

BEFORE: LALLY–GREEN, GANTMAN and ALLEN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant/Cross–Appellee, Valerie S. Gaydos ("Executor"), executor of the Estate (the "Estate") of Bruce E. Johnson (the "Deceased"), and Appellee/Cross–Appellant Deborah Rogers Johnson ("Johnson"), appeal from the trial court's order and decree of September 21, 2007. We affirm in part and vacate in part.

¶ 2 This matter arises from the administration of the Estate. The Deceased died testate on February 21, 2002, at which point Johnson, the Deceased's ex-wife, was the guardian of the couple's two minor children. Both children reached the age of majority subsequent to the filing of this action. Johnson filed objections to the

Executor's proposed First and Final Account, alleging that the Estate was bound by the terms of a 1993 Marital Dissolution Agreement ("MDA") to continue to provide child support and cover other expenses on behalf of the minor children. The Executor disputed those obligations and noted that the children began receiving $929.00 per month in Social Security benefits after their father's death. The Executor argued that the Estate was entitled to use the Social Security payments as a credit against the child support obligation.

¶3 The Dauphin County Court of Common Pleas, Orphans' Court Division, after review of the parties' stipulated facts, issued an order directing that: (1) the Estate was liable for child support payments of $700.00 per month to the minor children until they reach age 18, pursuant to the MDA; (2) the Estate was not entitled to use the Social Security benefits as a credit against the child support obligation; (3) the Estate was not obligated to contribute to the children's college expenses, as there was no enforceable agreement on that point in the MDA; and (4) the Estate was obligated to cover certain of the children's medical expenses pursuant to the MDA.

¶4 The Executor filed this timely appeal, in which she raises the following issues:

A. Did the lower court err in interpreting a Marital Dissolution Agreement (between Decedent and Deborah Rogers Johnson) to require that payments of child support be made from the Estate after Decedent's death, where, under applicable Pennsylvania law, the obligation of a parent to provide financial support to a child ceases when the child reaches age eighteen (18) or when the parent dies, whichever occurs first; where the agreement did not specifically provide for such payments but instead provided a life insurance option that Decedent's former spouse failed to exercise; and where Decedent made no provision for the minor children in his Last Will and Testament?

B. Did the lower court err in refusing to allow Social Security payments received by the minor children as a consequence of Decedent's death to be credited against any post-mortem child support obligations, with the result that post-mortem child support payments amount to a windfall?

C. Did the lower court err in interpreting the Marital Dissolution Agreement to require reimbursement from the Estate of medical expenses incurred by one of the minor children after Decedent's death?

D. Did the lower court err in awarding prejudgment interest to the objector with respect to unpaid installments of child support, where the Marital Dissolution Agreement made no provision for payment of interest, where payments were not in arrears at the time of Decedent's death, and where the lower court specifically found that the executor's failure to continue making payments of child support after Decedent's death did **not** constitute a breach of the agreement?

Executor's Brief at 5 (emphasis in original).[1]

■ ¶5 We review the trial court's order according to the following standard:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from

---

1. The Executor included these issues in a timely concise statement of errors complained of on appeal. Pa.R.A.P.1925(b).

legal error and the court's factual findings are supported by the evidence. *In re Estate of Rosser*, 821 A.2d 615, 619 (Pa.Super.2003), *appeal denied*, 574 Pa. 761, 831 A.2d 600 (2003).

¶ 6 The Executor first argues that the trial court erred in concluding that the Deceased's contractual obligation in the MDA to provide $700.00 per month in child support to the children until age 18 is enforceable after the Deceased's death. We have held that parents do not have a duty to provide for minor children in their estate. *Benson v. Patterson*, 782 A.2d 553 (Pa.Super.2001), *affirmed*, 574 Pa. 346, 830 A.2d 966 (2003); *Garney v. Hain*, 439 Pa.Super. 42, 653 A.2d 21 (1995), *appeal denied*, 541 Pa. 626, 661 A.2d 873 (1995). Pennsylvania courts have held, however, that parents may contractually bind their estates to continue to make support payments in the event of the parent's death. *See In re Fessman's Estate*, 386 Pa. 447, 126 A.2d 676 (1956) (enforcing an agreement of child support against the claims of a residual legatee under father's will); *Huffman v. Huffman*, 311 Pa. 123, 166 A. 570 (1933) (enforcing father's agreement to pay support "until the children were self supporting" against the administratrix); *In re Stumpf's Appeal*, 116 Pa. 33, 8 A. 866 (1887) (contract to provide necessary expenses to support an out–of–wedlock child binding on the father's testators); *see also Benson*, 782 A.2d at 555 ("While a marriage settlement agreement is a contract and may be separately enforced against the estate of a decedent [ . . . ] the only basis for a court order requiring a parent to support a child arises from the imposition of a statutory duty."). Thus, Pennsylvania case law does not preclude parents from contractually obligating their estate to pay child support.

¶ 7 We will interpret the provisions of the MDA according to the law of contracts. *See Melton v. Melton*, 831 A.2d 646, 653 (Pa.Super.2003). Accordingly:

[W]e are mindful that the interpretation of a contract is a question of law. Therefore, our standard of review is plenary. When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

*Id.* at 653–654.

¶ 8 The MDA provides in relevant part as follows:

22. *Child Support:*

In the event that paternity has been established by agreement of the parties or by Court Order, [Deceased] hereby agrees to pay to [Johnson] the sum of Seven Hundred ($700) Dollars a month per child as support. [ . . . ]

The parties hereto agree that any obligation of child support shall terminate upon the eighteenth (18) birthday of each respective child.

[ . . . ]

30. Agreement Binding On Heirs:

This Agreement shall be binding and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

Marital Dissolution Agreement, at ¶¶ 22, 30.

¶ 9 The Executor argues that the quoted language should be read in light of state law providing that an obligation of child support ends with a parent's death.

The unambiguous language of the MDA, however, binds the Executor to continue to pay child support until the children reach age 18. The parties could have included language in paragraph 22 providing that the obligation would terminate upon the death of the Deceased, but they did not. Since the clear language of the writing itself supports the trial court's decision, we conclude that the trial court did not commit an error of law in enforcing the child support provision of the MDA against the Estate.[2] The Executor's first argument lacks merit.

¶ 10 Next, we consider the argument that the Estate is entitled to a credit for the Social Security death benefits as against the child support obligation. As we noted above, the children began receiving $929.00 per month in Social Security benefits upon their father's death. In these circumstances, there is a rebuttable presumption that credit will be given for Social Security payments made to a child. *Preston v. Preston,* 435 Pa.Super. 459, 646 A.2d 1186, 1187 (1994); *Miller v. Bistransky,* 451 Pa.Super. 433, 679 A.2d 1300 (1996); *Children and Youth Servs. of Allegheny County v. Chorgo,* 341 Pa.Super. 512, 491 A.2d 1374 (1985).

¶ 11 In *Chorgo,*[3] the father argued that Social Security retirement payments made directly to his children should be credited against his child support obligation. We analyzed the nature of the Social Security benefits and the effect of a credit on the support recipients. We explained that Social Security benefits are earned over the course of time by virtue of a person's employment and payment of taxes. *Id.* at 1376, *citing Andler v. Andler,* 217 Kan. 538, 538 P.2d 649 (1975). Likewise, direct payment of Social Security benefits to children simply alters the source of payment while satisfying the purpose of the support obligation. *Id.* at 1375, *citing Davis v. Davis,* 141 Vt. 398, 449 A.2d 947 (1982). We concluded that the father was entitled to credit:

> First, since the obligor has paid in advance for these benefits over the years (albeit mandatorily), they should be recognized as the fruits of his labor. Second, since the child will still receive the same amount of support which the court has decided he should have, it does not matter to that party that the obligor is given credit.

*Id.* at 1377. *Chorgo* described the obligor's entitlement to credit as a rebuttable presumption, but did not give guidance as to what sort of evidence might rebut the presumption.[4]

2. Johnson's failure to procure an insurance policy on the Deceased's life for the benefit of the children, per paragraph 23 of the MDA, does not alter this conclusion. Paragraph 23 provides that the Deceased would have submitted to a medical examination and that Johnson would have been responsible for the expenses of procuring such a policy. We express no opinion on whether the proceeds of such a policy could have been credited against the support obligation. We do not believe, however, that the existence of this option bears on our construction of paragraphs 22 and 30.

3. We recognize that *Chorgo* predates the child support guidelines. *See* Pa.R.C.P.1910.16.

The current guidelines take account of a child's derivative Social Security benefits. Pa.R.C.P.1910.16–4. In the instant matter, as we have noted, the Johnsons agreed on an amount of support in their 1993 MDA. We therefore confine our analysis to the effect of *Chorgo* and its progeny on the contractual support obligation set forth in the MDA.

4. We did not expound on *Chorgo* in *Miller* or *Preston.* In both cases, we simply remanded for reconsideration in light of *Chorgo* where the trial court denied credit to the child support obligor without explanation. *Miller,* 679 A.2d at 1303; *Preston,* 646 A.2d at 1187–1188.

¶ 12 In the instant matter, unlike *Chorgo*, we are dealing with death benefits rather than retirement benefits. Death benefits are the product of the Deceased's employment and payment of taxes. In that regard, they are no different than the retirement benefits at issue in *Chorgo*. Also, the death benefits are merely a different source of money from which the support obligation can be fulfilled.

¶ 13 The trial court distinguished *Chorgo* in that *Chorgo* involved court-ordered support whereas the instant matter involves a contractual agreement to provide support. We do not believe this distinction is persuasive. The existence of a contract-based rather than a court-ordered support obligation does not undermine our rationale in *Chorgo*, quoted above, for allowing a credit for Social Security benefits.

¶ 14 Johnson argues that the Social Security death benefits are a matter of federal government "largesse" and that we should allow the children to receive a windfall. Johnson's Brief at 11. This argument flatly contradicts our opinion in *Chorgo* that Social Security benefits are not a matter of largesse but are earned through employment and payment of taxes.

¶ 15 Johnson also argues that other jurisdictions are split on whether Social Security payments should be credited against a child support obligation. Johnson cites a single California case, *Bertrand v. Bertrand*, 33 Cal.App.4th 437, 39 Cal.Rptr.2d 151 (1995). In that case, the Court applied a California statute that provided a credit against support obligations for certain Social Security payments, not including death benefits. The Court declined to allow a credit for death benefits, reasoning that the statute should be read as excluding all things not expressly mentioned. Pennsylvania has no analogous statute. Moreover, as we have already made clear, our reasoning in *Chorgo* applies with equal force to death benefits.[5]

¶ 16 In light of the foregoing, we conclude that the trial court erred in declining to allow the Estate to credit the Social Security benefits against the support obligation. The *Chorgo* presumption applies in this case, and Johnson has not identified any basis upon which we may distinguish *Chorgo* or conclude that she has rebutted the presumption. Since the Social Security benefits exceed the support obligation, no money is due under the MDA. We will vacate the trial court's order directing payment of child support pursuant to the MDA.

■■■ ¶ 17 The Executor next argues that the trial court erred in ordering the Estate to reimburse certain of the minor children's medical expenses pursuant to the terms of the MDA. The MDA provides in relevant part that "Husband shall be solely responsible for the payment of all non-reimbursed expenses for reasonably required medical care...." MDA Addendum, 4/5/93. We apply the same rules of contract interpretation as above. The record reflects non-reimbursed medical ex-

---

5. The approach we adopted in *Chorgo* is consistent with the majority of jurisdictions that have considered the same issue. *See Chorgo* (collecting cases); *see also Windham v. State*, 574 So.2d 853 (Ala.Civ.App.1990); *In re Clay*, 208 Ariz. 200, 92 P.3d 426 (App.2004); *Clark v. Clark*, 110 Hawai'i 459, 134 P.3d 625 (Haw.Ct.App.2006); *Board v. Board*, 690 S.W.2d 380 (Ky.1985); *Keith v. Purvis*, 982 So.2d 1033 (Miss.Ct.App.2008); *Weaks v. Weaks*, 821 S.W.2d 503 (Mo.1991); *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999); *Crago v. Donovan*, 594 N.W.2d 726 (S.D. 1999); *but see Pessein v. Pessein*, 68 Wash. App. 893, 846 P.2d 1385 (App.1993); *see generally*, Rebecca Spencer, Comment, *Using Social Security Benefits as a Credit Towards a Child Support Obligation*, 16 J. Am. Acad. Matrimonial Law 223 (1999).

penses of $609.60. The Executor paid $155.20 of that amount and does not dispute that the remaining balance of $454.40 pertains to reasonably required medical care. Pursuant to the clear language of the MDA, the Estate must reimburse Johnson for the remaining balance.[6] We will affirm the trial court's order in this regard.

¶ 18 The Executor's final argument is that the trial court erred in adding prejudgment interest to the award of unpaid child support. Since we have concluded that the Estate did not owe child support pursuant to the MDA, we will vacate the award of prejudgment interest.

¶ 19 We now turn our attention to Johnson's cross-appeal, in which she raises the following issues:

Did the trial court err by not requiring the Estate to contribute to the Minor Children's college education expenses "pursuant to and in accordance with applicable state law"?

Did the trial court err by holding that there was no breach of the Marital Dissolution Agreement and therefore no right to "payment of reasonable legal fees and costs incurred by the other [party] in enforcing their [sic] rights under the Agreement"?

Johnson's Brief at 1 (quotation marks and brackets in original).[7]

¶ 20 Johnson first argues that the trial court erred in declining to enforce the Deceased's alleged agreement in the MDA to provide for the children's college expenses. We will apply the same principles of contract construction as above. The MDA provides in relevant part:

Husband does agree to contribute to each child's college education pursuant to and in accordance with the agreement of the parties or applicable law.

MDA at ¶ 22.

¶ 21 Johnson and the Deceased never entered into the agreement contemplated in paragraph 22. Also, paragraph 22 clearly does not contain sufficient specific terms to constitute an enforceable agreement in and of itself. *See, e.g., Yarnall v. Almy*, 703 A.2d 535, 538 (Pa.Super.1997) ("In order to form a contract, there must be an offer, acceptance, and consideration or mutual meeting of the minds."). Likewise, Pennsylvania law does not impose an obligation on parents to provide for their children's college expenses. *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992).[8] Thus, we reject Johnson's argument that the MDA binds the Estate to contribute to the children's college expenses. Johnson's first argument fails.[9]

---

6. Johnson concedes in her brief that, as the children have reached the age of majority, the Estate will incur no further medical expenses on behalf of the children. Johnson's Brief at 12.

7. Johnson did not preserve these issues in a timely concise statement of errors. Pa.R.A.P. 1925. The docket, however, does not reflect service of the Rule 1925(b) order on Johnson pursuant to Pa.R.C.P. 236(b). We will not deem Johnson's issues waived.

8. Our legislature overruled *Blue* by statute, but our Supreme Court subsequently vacated

that statute as unconstitutional in *Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995).

9. Johnson's brief contains a bald assertion that Pa.R.C.P.1910.1–1910.50 constitutes the "applicable law" contemplated in paragraph 22 and provides sufficient basis for an enforceable obligation. Johnson fails to develop this argument with any specificity, and we will not address it. *See In re A.P.*, 920 A.2d 1269, 1275 (Pa.Super.2007) (failure to develop an argument results in waiver), *appeal denied*, 593 Pa. 744, 931 A.2d 655 (2007).

¶ 22 Johnson's second argument is that she is entitled to recover attorney fees and legal costs incurred in prosecuting the alleged breach of the MDA. Johnson fails to cite any law governing an award of attorney's fees. This failure results in waiver. Pa.R.A.P. 2119(b); *Dalrymple v. Kilishek*, 920 A.2d 1275, 1281 (Pa.Super.2007). In any event, we have concluded that no money is due to the children under the MDA, other than a few hundred dollars in medical expenses. We therefore do not believe that the Executor's conduct in this matter could be described as "dilatory, obdurate, or vexatious." *See* 42 Pa. C.S.A. § 2503(7). The trial court properly denied Johnson's request for counsel fees. Johnson's second argument on cross-appeal fails.

¶ 23 In summary, we vacate the trial court's order directing the Estate to pay child support pursuant to the MDA. We affirm the trial court's order directing the Estate to reimburse certain medical expenses pursuant to the MDA. We vacate the trial court's award of prejudgment interest and affirm the trial court's denial of counsel fees.

¶ 24 Order and decree affirmed in part and vacated in part. Jurisdiction relinquished.