J-A02035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KRISTA TROY FOSTER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TODD ALDEN FOSTER | : | |
| | : | |
| Appellant | : | No. 1888 WDA 2019 |

Appeal from the Order Entered December 2, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. FD02-000833-005

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: MAY 13, 2021**

Todd Allen Foster ("Husband") appeals from the order finding that he breached the terms of a Marital Settlement Agreement ("MSA") and requiring him to reinstate a life insurance policy for the benefit of his children, reimburse his children for payments made on their student loans, remove their names from their student loans, and pay the attorneys' fees of Krista Troy Foster ("Wife"). Husband also challenges the court's finding him in contempt and determining that he is unable to recoup his overpayment of child support. We affirm.

Husband and Wife were married in 1988. Wife filed for divorce in 2003, and the court entered a divorce decree in November 2005. At the time of their divorce, the parties' four children — S.F., C.F., B.F., and M.F. — were minors.

Prior to the entry of the divorce decree, on September 17, 2005, the parties executed an MSA. In relevant part, the MSA contained the following provisions:

> 9. <u>Life Insurance</u>. . . . Husband agrees that he shall, within two (2) years from the date of the execution of this Agreement, purchase additional life insurance on his life at his expense for the benefit of the parties' children having a death benefit of One Million Five Hundred Thousand dollars ($1,500,000.00). The beneficiary of said policy or policies shall be a trust for the benefit of the parties' children.
>
> > 9.1 <u>Payment of Premiums</u>. . . . With respect to all life insurance policies provided by this Agreement, Husband agrees to promptly pay all such premiums on time and in full. . . .
>
> . . .
>
> 15. <u>Alimony and child support</u>. Commencing on October 1, 2005, and continuing on the first day of each month thereafter until August 31, 2018 unless terminated sooner as provided by paragraph 15.2 of this Agreement, Husband shall pay child support and alimony to Wife in such amount as provided by Column 4 of the chart provided in paragraph 15.3 of this Agreement. . . . A PACSES order shall be prepared by Wife's counsel and processed through Family Division to effectuate the terms of this Agreement. . . .
>
> > 15.3 <u>Modification</u>. . . .
> >
> > [Chart showing amount of child support due based on Husband's gross annual income]*
> >
> > *reduced by 25% as each child reaches age 19
> >
> > . . .
> >
> > The child support portion of the combined obligation shall be reduced by 25% for each child who has reached age 19.
> >
> > . . .

16. <u>Educational Support</u>. Husband agrees to pay 100% of the post-secondary educational expenses for each of the parties' four (4) minor children, provided that (1) such child demonstrates sufficient academic ability, willingness, and desire to pursue and complete a course of study; (2) each of the parents is consulted with respect to the choice of educational institution and course of study; and (3) the child makes reasonable efforts to obtain grants and scholarships. The children shall not be required to apply for loans. Husband shall not unreasonably object to the choices proposed by each of the parties' children with respect to the educational institutions and courses of study. For the purposes of this paragraph, the term "post-secondary educational expenses" shall mean tuition, room and board, books, activity fees, personal allowances, and transportation incident to the children's college studies or vocational training through the completion of their undergraduate degrees or training certificates.

. . .

18. <u>Counsel fees, Costs and Expenses</u>. Except as otherwise provided by this Agreement, each agrees to pay his or her own counsel fees, costs and expenses without claim against the other. It is expressly stipulated that if either party fails in the timely performance of any of his or her material obligations under this Agreement, the other party shall have the right, as his or her election, to sue for damages for breach thereof, to sue for specific performance, or to seek any other legal remedies as may be available, and the defaulting party shall pay all reasonable legal fees and expenses for any services rendered by the aggrieved party's attorney in any action or proceeding to compel performance hereunder.

MSA, executed 9/17/05, at ¶¶ 3, 9, 15, 16, and 18.

In 2019, Wife filed a Motion for Contempt and to Enforce Settlement Agreement. Relevant here are Wife's allegations that Husband had failed to maintain life insurance for the benefit of the parties' children, in violation of Paragraph 9 of the MSA, and that he failed to comply with Paragraph 16 by taking out school loans in the older two children's names.

The court held a hearing, at which Wife was represented by counsel, and Husband proceeded *pro se*. Both Husband and Wife testified, as did Wife's father. Husband argued that he had not been able to afford the premiums for the life insurance policy, and stated he was considering bankruptcy. He also claimed he had allowed the policy to lapse because he believed he was not obligated to pay the premiums once his child support obligation had ended. He further argued that he was not responsible for payment of educational costs for S.F. and B.F., as he claimed he had not been consulted regarding their choice of schools. He also objected to the school choice of B.F. on the ground that she had received a scholarship at another school that Husband thought preferable due to its undergraduate and master's programs in B.F.'s subject of interest. In addition, Husband asserted that he had not decreased the amount of child support when the children had turned 19 years old, despite a provision of the MSA allowing him to do so, and that he should be compensated for his overpayment.

Several months later, in December 2019, the court issued Findings of Fact and Conclusions of Law finding that Husband had breached the MSA and that his breach "was volitional." Findings of Fact and Conclusions of Law, 12/2/19,[1] at 2. The court adopted Wife's proposed factual findings, with minor modifications. *Id.* The court found:

---

[1] Although the court's Findings of Fact/Conclusions of Law and corresponding Order are both dated November 27, 2019, they were not entered on the docket until December 2, 2019. We have amended the caption accordingly.

- 4 -

- Husband had failed to comply with the MSA provision requiring him to maintain a life insurance policy for the benefit of the children;

- Each child had consulted Husband on their school choice;

- Husband consented to the school choices of S.F., C.F., and M.F.;

- Husband's objection to B.F.'s school choice was unreasonable;

- S.F. has paid some of her student loans without reimbursement by Husband; and

- Husband voluntarily made any overpayment of child support.

Adopted Findings of Fact, 12/2/19, at ¶¶ 9, 32, 33, 35, 40, 52.

The court also adopted Wife's conclusions of law, including:

- The terms of the MSA are clear and unambiguous;

- Husband failed to prove that he does not have the ability to comply with the MSA; and

- Husband is liable for Wife's attorneys' fees both pursuant to Paragraph 18 of the MSA and under 23 Pa.C.S.A. § 3502(e)(7).

Adopted Conclusions of Law, 12/2/19, at ¶¶ 13, 47, 56, 57.

It also found that Husband had "demonstrated wrongful intent by unreasonably withholding consent to college choices based on cost and/or loans, in contravention of the provisions and intent of the MSA." Findings of Fact and Conclusions of Law at 2. The court concluded that Husband "has the present ability to pay the obligations [Wife] is seeking to enforce, and/or that any actual inability to pay would not act to discharge [Husband's] obligation to pay as required by the MSA as enforced hereby." *Id.* It further found Husband's overpayment claim was barred by laches. *Id.*

In addition, the court stated that it did not appear "that the parties' adult children whose tuition has not been covered or reimbursed have provided written consent for [Wife] to recover educational costs on their behalf as required by 23 Pa.C.S.A. § 4327(b)." *Id.* at 3. The court stated it would therefore "condition payment of such tuition expenses upon receipt by [Husband] of evidence of such written consent." *Id.*

The court issued an order holding Husband in contempt and requiring him to: (1) maintain a life insurance policy for the benefit of the children, and provide proof to Wife's counsel within 30 days; (2) reimburse the children for any and all amounts they have paid on their school loans; (3) remove the children's names from their school loans within 30 days "of receipt by [Husband's] counsel of written acknowledgment from such adult children, respectively, that they consent to [Wife] recovering educational costs on their behalf"; and (4) pay Wife's counsel fees in the amount of $9,261.00 within 30 days. Order, 12/2/19, at 1-2. The order also stated that Husband "did not overpay for any support obligations. Any modifications of support shall occur through a modification petition." *Id.* at 2.[2]

Husband appealed, and raises the following issues:

A. Did the lower court err as a matter of law and/or abuse its discretion in finding [Husband] in contempt of court, insofar as he allegedly breached the parties' Marital Settlement Agreement dated September 27, 2005 by failing to maintain two (2) life

---

[2] The court also ordered Husband to reimburse Wife $435.00 for an insurance premium payment she made on a policy required by the MSA for which she is the beneficiary. Husband did not appeal this portion of the court's order.

insurance policies even though he did not have the present ability to comply with said obligation, and his ability to comply was neither volitional nor committed with wrongful intent?

B. Did the lower court err as a matter of law and/or abuse its discretion in unilaterally permitting all four (4) adult children, *after* the record was closed, to provide their prospective written consents to [Wife] to recover educational costs on their behalf pursuant to 23 Pa.C.S.A. § 4327(b)?

C. Did the lower court err as a matter of law and/or abuse its discretion in finding [Husband] in contempt of court, insofar as he allegedly breached the parties' Marital Settlement Agreement dated September 27, 2005 by failing to pay the college expenses of all four (4) children, even though [Husband] was not consulted about the choices of the educational institutions chosen by each child as required by the Marital Settlement Agreement?

D. Did the lower court err as a matter of law and/or abuse its discretion in failing to provide [Husband] with a child support overpayment credit in the amount of $162,750, or in any amount whatsoever, despite Record evidence of [Husband]'s entitlement to same?

Husband's Br. at 5-6 (emphasis in original).

"When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." **Stamerro v. Stamerro**, 889 A.2d 1251, 1257 (Pa.Super. 2005) (quotation marks and citation omitted). We are thus bound by the court's credibility determinations. **Id.** at 1257-58. Marital settlement agreements are subject to contract principles, and to the extent the issues present questions of law, our standard of review is *de novo*, and our scope of review is plenary. **Id.** at 1257; **see also Kraisinger v. Kraisinger**, 928 A.2d 333, 339 (Pa.Super. 2007).

We review a finding of contempt for an abuse of discretion. ***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa.Super. 2013). Contempt is appropriate where the complaining party has shown that the (1) the contemnor had notice of the order, (2) the contemnor purposefully violated the order, and (3) the contemnor acted with wrongful intent. ***Id.*** (citing ***Stahl v. Redcay***, 897 A.2d 478, 489 (Pa.Super. 2006)). A marital settlement agreement is enforceable through contempt. ***See*** 23 Pa.C.S.A. § 3105(a); 23 Pa.C.S.A. § 3502(e)(9).

## I. Life Insurance Policies

Husband first argues that the court erred in ordering him to comply with the provision of the MSA requiring him to maintain a life insurance policy for the benefit of the children. Husband argues that impossibility of performance is a valid defense to breach of contract, and that he had stopped paying premiums on the life insurance policy because he could not afford to pay them. Husband points to his testimony that he had overpaid in child support and was considering bankruptcy, and argues the court erred in considering that he had not yet filed for bankruptcy by the time of the court's decision. Husband also argues the court erred in faulting him for retaining counsel following the hearing when he could not afford counsel at the hearing.

Husband further argues that he stopped paying premiums on the life insurance policy because he believed he was not required to maintain the policy once child support had ended. Husband argues that because the MSA did not include a provision regarding when his obligation would terminate, the

court should adopt a reasonable interpretation of the contract and hold that this obligation ended when his child support obligation ended.

In addition, Husband argues that the court erred in finding him in contempt due to his failure to maintain the policy. He claims Wife did not prove he had the ability to pay or that his failure to comply was volitional or committed with wrongful intent.

"When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties['] understanding." **Habjan**, 73 A.3d at 640 (quoting **Lang v. Meske**, 850 A.2d 737, 739-40 (Pa.Super. 2004)); **see also Stamerro**, 889 A.2d at 1258. Here, the court properly found that the terms of the MSA are clear and unambiguous. Husband's contention that the MSA is unclear because it does not state a date on which his duty to pay the life insurance premiums ends is meritless. To the contrary, the MSA is perfectly clear in this regard. Paragraph 9 of the MSA requires Husband to maintain a life insurance policy for the benefit of the children, and there is no termination date for this requirement. In the context of an MSA, the parties can reasonably agree that such an obligation would continue without end, as part of their negotiated settlement of all financial issues in the divorce. As Husband does not dispute that no policy is currently in effect, the court properly found him in breach.

Regarding Husband's assertions of penury, a party's mere financial inability to comply with contract terms does not qualify as impossibility of performance. **Luber v. Luber**, 614 A.2d 771, 774 (Pa.Super. 1992). In any

event, the court was free to disregard Husband's self-serving testimony that he was unable to pay the premiums. Husband failed to corroborate his bald testimony with other evidence of his financial hardship or establish the cost of the premiums in relation to his financial status. We are bound by the trial court's credibility determination and find no abuse of discretion in the court's disbelief of Husband's defense. In sum, the court's findings on this issue are supported by the evidence of record, and do not constitute an abuse of discretion or error of law.

Regarding the court's finding of contempt, the court did not specify whether it found contempt on the basis that Husband had violated the provision regarding the insurance policy, or the provision regarding the payment of educational expenses, or both. However, the court specifically found that Husband had acted with wrongful intent—an element of a contempt finding—for unreasonably objecting to the children's' school choice. The court made no such finding of wrongful intent in relation to Husband's failure to maintain the insurance policy for the benefit of the children. Therefore, the record does not reflect the trial court found Husband in contempt for failing to comply with Paragraph 9.

Moreover, even if the court had found Husband in contempt based on his failure to maintain the insurance policy, this would have caused no prejudice to Husband, as the court did not sanction Husband for contempt. While the court ordered Husband to pay Wife's attorneys' fees, the court found Husband liable for Wife's attorney fees both pursuant to Paragraph 18 of the

MSA and under 23 Pa.C.S.A. § 3502(e)(7), neither of which are based upon a finding of contempt. This issue merits no relief.

## II. 23 Pa.C.S.A. § 4327(b)

Husband next argues that the court erred in allowing Wife to pursue an action for recovery of educational expenses without the children's written consents, as required by 23 Pa.C.S.A. § 4327(b). Although the court ordered the children to submit the consents to Husband, as a condition to Husband's obligation to remove the children's names from their student loans, Husband argues this was a clear abuse of discretion, as at that point, the action had already been decided and the record was closed.

Section 4327(b) provides in relevant part:

> **(b) Action to recover educational expenses.--**An action to recover educational costs may be commenced:
>
> (1) by the student if over 18 years of age; or
>
> (2) by either parent on behalf of a child under 18 years of age, but, if the student is over 18 years of age, the student's written consent to the action must be secured.

23 Pa.C.S.A. § 4327(b).

In ***Curtis v. Kline***, 666 A.2d 265, 267 (Pa. 1995), the Pennsylvania Supreme Court invalidated on equal protection grounds subsection (a) of Section 4327, which created the substantive right to have parents "who are separated, divorced, unmarried or otherwise subject to an existing support obligation" pay for postsecondary educational costs. As that statutory right is no longer enforceable, it is questionable that the procedural elements set forth

in subsection (b) to enforce such a right continue to have any effect. Moreover, where the parties enter into a private agreement regarding their responsibility, the contract terms are controlling. ***See*** 23 Pa.C.S.A. 4327(i)(2) (stating Section 4327 "shall not supersede or modify the express terms of a voluntary written marital settlement agreement . . ."); ***W.A.M. v. S.P.C.***, 95 A.3d 349, 352 (Pa.Super. 2014); ***In re Est. of Johnson***, 970 A.2d 433, 439 (Pa.Super. 2009). Here, the MSA does not condition Husband's responsibility on the written consents of the children.

Even assuming *arguendo* that Section 4327(b) applied here, Husband's claim does not merit relief, as Husband does not claim that he was meaningfully prejudiced in any way. Husband has not at any time disputed the authenticity of the consents or claimed that his children objected to their mother seeking to enforce the educational expenses provision of the MSA. Although the court directed Husband to remove the children's names from their student loans only after he received the written consents, we fail to see how Husband was prejudiced. If anything, it afforded him extra protection, if one or more of the children refused to give the consent. No relief is due.

### III. Consultation on School Choice

Husband argues that the court erred in finding he breached the MSA by failing to pay for the children's postsecondary education, because S.F. and B.F. did not consult him on their school choice as required by Paragraph 16. Husband contends he was not consulted on S.F.'s school choice because he was only "informed" what school S.F. would be attending and he "did not have

any choice in the matter per se at all." Husband's Br. at 21 (quoting N.T. at 56). He also argues B.F. did not tell him her decision until the final day before the decision deadline, and that he did not "have a real voice." *Id.* at 23 (quoting N.T. at 63-64).

Husband also argues that he should not be held liable for the children's educational costs because his objections to the children's school choices were reasonable. He asserts he objected to the school choices of S.F. and C.F. on the basis that they had received scholarships at other schools, and to B.F.'s choice of schools because she had received a scholarship at another school which Husband thought preferable due to its undergraduate and master's program in B.F.'s subject of interest. Husband also argues he should not be responsible for C.F.'s educational costs, as she gave him a written statement that she is responsible for all of her student loans.

Paragraph 16 of the MSA conditioned Husband's obligation to pay for the children's education on the requirement that "each of the parents is consulted with respect to the choice of educational institution and course of study[.]" MSA at ¶ 16. Paragraph 16 also provides that each parent "shall not unreasonably object to" the children's choices in this regard. *Id.*

The trial court did not abuse its discretion in finding against Husband on this issue. As the MSA does not define "consult," we turn to the ordinary meaning of the term and examine dictionary definitions. *Profit Wize Mktg. v. Wiest*, 812 A.2d 1270, 1274 (Pa.Super. 2002). "Consultation" is "1. The act of asking the advice or opinion of someone . . . 2. A meeting in which

parties consult or confer . . . ." CONSULTATION, Black's Law Dictionary (11th ed.1999). Merriam-Webster defines "consult" as "to have regard to consider . . . to ask the advice or opinion of . . . to refer to . . . to deliberate together . . . ." "Consult." Merriam-Webster.com Dictionary, merriam-webster.com/dictionary/consult, last accessed Mar. 19, 2021.

Here, Husband testified that S.F. and B.F. informed him of their choice of schools, and because they did so at the last minute, he was deprived of any "real voice" in the matter. However, Husband does not assert that he had no opportunity before the deadline to have conversations and give them his advice and opinions on the matter. In fact, Husband testified that he had "ongoing discussions" with B.F. about the school he preferred for her. N.T. at 63. The fact that he feels he had no "real voice" – the plight of many a parent – does not mean he was not "consulted." The record supports the trial court's conclusion that the MSA's requirement of consultation was fulfilled.

We further find no merit to Husband's contention that the court erred in requiring him to pay for the educational costs of S.F., C.F., and B.F. even though he objected. The trial court found that Husband consented to the school choices of S.F. and C.F. The record supports these findings. While Husband testified regarding the school choice for each child, he did not testify that he objected to their choices, except for that of B.F. **See** N.T. 55-64. As for B.F., the court found that Husband's objection, on the basis of cost, to B.F.'s school choice was unreasonable. This was not an abuse of discretion, as

- 14 -

Husband failed to prove the expenses associated with the schools, or his inability to pay for B.F.'s school of choice.

Finally, we find no merit to Husband's contention that the court erred in ordering him to pay the cost of C.F.'s postsecondary education. Although Husband alleges that C.F. provided him with a written waiver of his responsibility, the trial court sustained Wife's objection to Husband's testimony on this point, as inadmissible hearsay. N.T. at 58-60. There was no other evidence of any such alleged waiver. Husband's argument on this point was therefore neither properly preserved nor supported by the evidence of record.

### IV. Credit for Overpayment of Child Support

Husband argues that according to the MSA, his court-ordered child support should have been reduced by 25% as each child reached the age of 19, but that on "three separate occasions" he did not make the downward adjustment, and in total overpaid by $162,750. Husband's Br. at 25. Husband testified that he continued making the full payments so that Wife could stay in her home following the divorce from her second husband, and as payment towards a loan involving Wife's father. Husband argues he should be able to recoup the overpayment, and that the court erred in finding otherwise.

Husband's argument fails as a matter of law. An obligor is not entitled to credit for voluntary overpayment not intended as support. ***Spahr v. Spahr***, 869 A.2d 548, 555 (Pa.Super. 2005); ***see also Rich v. Rich***, 967 A.2d 400, 409 (Pa.Super. 2009) (noting caselaw centers on "whether the overpayment

was intended to provide future support or whether it was intended to be a gift"). Here, Husband admits he knowingly and voluntarily overpaid in child support, to assist Wife. *See* N.T. at 73 ("I decided that I would help her and pay the higher child support amount throughout. That is on me"). Thus, the court did not err in finding that Husband could not recoup his overpayment of child support.

Moreover, as the trial court observed, the proper avenue for Husband to pursue the downward adjustment contemplated by the MSA would be through the filing of a petition for modification of child support, as the MSA contemplated that Paragraph 15 would be enforced through corresponding support orders. ***See Krebs v. Krebs***, 944 A.2d 768 (Pa.Super. 2008) (requiring the entry of a new order when support is modified). As Husband has stated no valid grounds for relief, we affirm the order of the trial court.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/13/2021

- 16 -