J-A12039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALESCIA MARIE DINGLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY ALLEN DINGLE | : | |
| | : | |
| Appellant | : | No. 2629 EDA 2024 |

Appeal from the Order Entered May 22, 2024
In the Court of Common Pleas of Bucks County
Domestic Relations at No(s):  2018DR01877,
PACSES: 904117387

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:               **FILED OCTOBER 22, 2025**

Jeffrey Allen Dingle ("Father") appeals from the final child support order, which the trial court issued after determining, *inter alia*, Father had an earning capacity of $15 per hour.  Because Father has not identified an abuse of discretion in the trial court's decision to assess Father's earning capacity, we affirm.

The trial court summarized the factual and procedural background of this appeal as follows:

> [Father and Alescia Marie Dingle ("Mother") (collectively, "the parents"] are the natural parents of I.G.D. (the "Child"), who was born [in July 2012].  The parents were married on November 5, 2016, and separated on October 8, 2018.

> This matter began on December 3, 2018, when Mother filed her first complaint for support for one child.

* * * *

By order dated May 14, 2019 effective December 3, 2018, Father was obligated to pay $1,095.00 per month in child support. That order was based on Father's gross weekly earning ability of $4,000.00 and Mother's of $700.00.

On July 22, 2019, after a hearing, the court found Father in contempt of the May 14, 2019 child support order and ordered Father to make a payment that would bring him into compliance. Since then, Mother has had to file a wealth of contempt petitions against Father for his failure to maintain the mortgage for the Child's home and failure to make child support payments. As a result of those filings, between July of 2019 and July of 2022, Father has spent several periods of time at the Bucks County correctional facility with release conditioned on fulfillment of purge provisions. Also throughout this case, both parties have filed several petitions to modify the support obligation.

On July 31, 2019, effective July 2, 2019, the [child support o]rder was modified by agreement and subjected Father to pay $1,383.00 in child support and $277.00 towards arrears each month. That amount was based on his monthly net income of $12,025.24, and Mother's of $2,521.04.

On July 8, 2022, Father's support obligation was converted to a nonfinancial obligation . . . as Father was incarcerated for a felony conviction of aggravated assault of a sheriff at the Domestic Relations Office in the Bucks County Justice Center.

On August 15, 2023, upon Father's release, Mother filed her petition for modification to reinstate the financial obligation[, which gives rise to this appeal].

On March 14, 2024, the parties appeared before a conference officer of the Domestic Relations Section in Bucks County for a conference. [The hearing officer issued a summary of the trier of fact ("summary"), in which it determined Father had an earning capacity at $15 per hour. That same day, the trial court entered an interim order and scheduled a court hearing for May 20, 2024].

After [the May 20, 2024,] hearing on the matter [, the trial court entered a final order directing] Father . . . to pay $486.00 in child support and $48.00 in arrears per month. That amount reflects Father's assessed earning capacity of $15.00 per hour, working 40 hours per week; Mother's net monthly income of $8,236.66, effective August 15, 2023; and her net monthly income of $3,678.78, effective January 1, 2024.

- 2 -

Trial Ct. Supp. Op., 10/10/24, at 3-4 (some capitalization omitted).

Following a series of missteps in Father's filing and the clerk's docketing of a notice of appeal from the trial court's May 22, 2024 order, this Court issued an order determining that Father timely filed an appeal and directing the trial court to address the claims raised in Father's Pa.R.A.P. 1925(b) statement. **See** Order, 1943 EDA 2024, 10/2/24, at 3. The trial court filed a supplemental Rule 1925(a) opinion.[1]

Father raises the following issues for our review:

1. Did the trial court abuse its discretion by assigning an arbitrary income to [Father] for calculating child support payments when the uncontroverted evidence proved that [Father] has been trying but was unable to obtain employment and had no income?

2. Did the trial court error by violating statutory and case law of the Commonwealth when assigning an arbitrary income to [Father] for calculating child support payments when the uncontroverted evidence proved that [Father] had been trying but unable to obtain employment and had no income[?]

Father's Br. at 3.[2]

---

[1] In its supplemental opinion, the trial court suggested that all issues should be waived because Father filed his Rule 1925(b) statement one day late. However, because the docket did not indicate the date on which Father was served with the order to file a Rule 1925(b) statement, we decline to find waiver. **See In re Estate of Johnson**, 970 A.2d 433, 439 n.7 (Pa. Super. 2009).

[2] Father's statement of questions included a third issue regarding contempt hearings. **See** Father's Br. at 3-4 ("Did the trial court error by holding contempt hearings for failure to pay child support against [Father] when the uncontroverted evidence proved that [Father] had no income despite efforts to obtain employment?"). Because this appeal lies from the May 22, 2024 order, and that order did not involve contempt hearings, we will not address Father's third issue.

The following principles govern our review in an appeal from a child support order:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Morgan v. Morgan*, 99 A.3d 554, 556–57 (Pa. Super. 2014) (internal citation omitted).

Although he has set forth two separate issues, Father argues those issues in a single section of his brief, which challenges the trial court's decision to assess his earning capacity at $15 per hour.

It is well settled that a court calculates child support awards pursuant to specific guidelines that account for the capacity to pay and the reasonable needs of the particular child. *See Sichelstiel v. Sichelstiel*, 272 A.3d 530, 534 (Pa. Super. 2022). As this Court stated:

> [A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history.

*Woskob v. Woskob*, 843 A.2d 1247, 1251 (Pa. Super. 2004) (internal citations omitted). "Where a party . . . willfully fails to obtain appropriate employment, the support obligation is determined by his assessed earning capacity." *Baehr v. Baehr*, 889 A.2d 1240, 1245 (Pa. Super. 2005) (internal citation and quotation marks omitted); *see also* Pa.R.Civ.P. 1910.16-2(d)(4)(i).

Pennsylvania Rule of Civil Procedure 1910.16-2(d)(4)(ii) provides the following with respect to determining earning capacity:

> In determining a party's earning capacity, the trier-of-fact shall consider the party's:
>
> (A) child care responsibilities and expenses;
>
> (B) assets;
>
> (C) residence;
>
> (D) employment and earnings history;
>
> (E) job skills;
>
> (F) educational attainment;
>
> (G) literacy;
>
> (H) age;
>
> (I) health;
>
> (J) criminal record and other employment barriers;
>
> (K) record of seeking work;
>
> (L) local job market, including the availability of employers who are willing to hire the party;
>
> (M) local community prevailing earnings level; and
>
> (N) other relevant factors.

Pa.R.Civ.P. 1910.16-2(d)(4)(ii).

Rule 1910.19 governs modifications of child support and provides, in relevant part, "[a] petition for modification or termination of an existing support order shall specifically aver the material and substantial change in circumstances upon which the petition is based." Pa.R.Civ.P. 1910.19(a). "The burden of demonstrating a material and substantial change rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion." *Kimock v. Jones*, 47 A.3d 850, 855 (Pa. Super. 2012) (internal citation omitted).

Father argues the trial court's order cannot be sustained because he did not willfully fail to obtain appropriate employment. *See* Father's Br. at 9. He asserts he made good faith efforts to find a job after his release from prison but could not get a job because of his criminal conviction. *See id*. at 9-13. Father also contends the trial court's decision to set his earning capacity at $15 per hour was arbitrary and lacked a proper basis in the record. *See id*. at 14-15. In support, Father simply lists each factor in Rule 1910.16-2(d)(4)(ii) along with his notations, "[n]o questions during testimony," with respect to his childcare responsibilities and expenses, assets, literacy, age, health, the local job market, or prevailing earnings level in the local community. *See id*. He concludes that setting an earning capacity of $7.25 per hour would be more appropriate. *See id*. at 16.

- 6 -

After concluding Father's release from prison was a material and substantial change in circumstances, the trial court explained its decision to assess Father's earning capacity as follows:

As of the date of our hearing, Father mentioned he was still unemployed. So, to assess Father's net monthly income, consistent with the findings of the hearing officer, [the court] considered the following.

Mother is the primary caretaker of Child and absorbs all costs related to their care.

We did not hear any evidence of either party's potential assets, but not for lack of questioning. So, this factor did not impact our decision.

Father currently lives in Philadelphia. He is [forty-six] years old, in good health and has not reported any physical or developmental limitations that would impede his ability to work.

Father is currently unemployed, but his employment history reflects he had the capability to earn $208,000.00 gross annually. Before incarceration, Father utilized his bachelor's and master's degrees in computer engineering to work as a self-employed consultant.

Father was incarcerated from July 8, 2022, until August 14, 2023. Father was incarcerated on a felony conviction for aggravated assault of a sheriff at the Domestic Relations Office in the Bucks County Justice Center.

In the [nine[3]] months between Father's release and the hearing on Mother's petition, Father testified that he had applied for only [thirteen] jobs and attended only three job fairs. Throughout the hearing, Father urged us to believe he could not secure any employment because of his convictions. Yet, through testimony, we found several job sectors that Father did not even attempt to secure employment in because he wanted something "better."

_____

[3] The trial court said ten months in its opinion. However, because Father was released from prison in August 2023, and the court hearing occurred in May 2024, the figure is closer to nine months.

- 7 -

Considering the local job market and the availability of employers willing to hire people like Father, we do note that it can be more difficult for a convicted felon to secure employment as opposed to someone with no criminal history. But, Father, nearly one year since his release, has not exhausted all employment options. Father lives in Philadelphia—the biggest city in the Commonwealth, and one of the biggest cities on the east coast of the United States. Surely if he explores more job sectors, he will secure employment. It was clear from the testimony that Father is limiting his job search to jobs he feels are not beneath him.

Consistent with the [hearing officer's summary], the support guidelines of Pa.R.C[iv].P. 1910.16-1[, *et seq*.], and in considering the factors above, Father was assessed with an earning capacity of $15.00 gross per hour, for 40 hours per week. As such, no abuse of discretion was committed by this [c]ourt.

Trial Ct. Supp. Op., 10/10/24, at 10-12 (record citations omitted).

Following our review, we discern no abuse of discretion in the trial court decision that Father's failure to find appropriate employment by the time of the hearing was willful rather than a result of his criminal conviction. The trial court made a credibility determination against Father—namely, that applying for thirteen postings and attending three job fairs over the course of nine months since his release from prison, without seeking other possible avenues of employment he felt beneath him—constituted a willful failure to obtain employment. **See** Trial Ct. Supp. Op., 10/10/24, at 11-12. Because there is support in the record for the trial court's determination, we cannot conclude its decision was manifestly unreasonable.[4]

_____

[4] Father's reliance on **Com. ex rel. Wright v. Hendrick**, 312 A.2d 402 (Pa. 1973), at the hearing, and by passing citation in his brief, is inapt. That case involved a finding of contempt and the imprisonment of Wright, which our Supreme Court reversed, explaining:

*(Footnote Continued Next Page)*

As to Father's contention that an assessment of earning capacity at $15 per hour was arbitrary, the trial court balanced the relevant considerations required by Rule 1910.16-2(d)(4)(ii). *See* Trial Ct. Supp. Op., 10/10/24, at 10-12. Father's limited argument demonstrates no abuse of discretion. The trial court considered the relevant factors and evidence presented at the hearing. The court ultimately rejected Father's assertions that he could not obtain employment due to his criminal convictions. To the extent Father cites

_____

> Wright testified: that he was without funds and unable to pay any sum towards the arrearage due on the support orders; that he was in prison from June, 1968 to June 11, 1970, under a sentence imposed following his conviction for an unrelated criminal offense; that he was able and willing to work, but had been continuously unemployed since November, 1970, despite efforts to gain employment; and, that he was currently being supported by his mother. There was no testimony from any source to discredit or disprove this testimony.
>
> * * * *
>
> The trial court reasoned that since Wright was young and in good health, his continued unemployment, coupled with his chronic failure to make contributions towards the support of the children, constituted a wilful disregard of the court's orders. To this, we cannot subscribe. If the record warranted the conclusion that Wright refused to work, and, thus through his own fault was rendered incapable of making payments on the outstanding support orders, this might well constitute a wilful noncompliance.

*Com. ex rel. Wright*, 312 A.2d at 404. In the present case, the trial court's determination to assess a $15 per hour earning capacity did not implicate concerns about imprisonment based on indigency. *Cf*. *id*. 403. Moreover, there was evidence supporting the trial court's credibility determination against Father's claim unemployment was due to his felony conviction, when he only applied to thirteen positions and attended three job fairs over the course of nine months between his release from prison and the time of the hearing before the court. *See id*. at 404.

*Calibeo v. Calibeo*, 663 A.2d 184 (Pa. Super. 1995), that case does not support his claim that the trial court abused its discretion. *See Calibeo*, 663 A.2d at 187 (concluding the trial court there did not abuse its discretion when assessing earning capacity where the appellant was fifty-seven years old at the time of the hearing, had a twelfth-grade education, some work experience outside of the home, and the record did not contain additional evidence to sustain her claim that she was disabled and unable to work). In the present appeal, Father's insistence that he could not secure employment due to his criminal conviction provides no basis for this Court to disturb the trial court's judgment. *See id*.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/22/2025