J-S17017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| DENISE SPANGLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES SPANGLER | : | |
| | : | |
| Appellant | : | No. 1368 WDA 2022 |

Appeal from the Decree Entered October 24, 2022
In the Court of Common Pleas of Butler County Civil Division at No(s):
20-90305-D

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: October 4, 2023**

Appellant, James Spangler ("Husband"), appeals from a decree entered on October 24, 2022 that dissolved his marriage to Denise Spangler ("Wife"). On appeal, Husband challenges an equitable distribution of the marital estate and alimony award also entered on October 24, 2022.  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  Husband and Wife married on March 4, 2000.  Wife filed a complaint of divorce on June 2, 2020.  After Wife filed for divorce, the parties disputed the date of their separation.  The trial court conducted a hearing on the matter on February 16, 2022.  Thereafter, the trial court determined that April 19, 2020, constituted the date of separation.  Trial Court Memorandum Order, 2/23/22, at *1-*10 (unpaginated).

The matter proceeded to trial on April 5, 2022, July 25, 2022, and July 26, 2022.  On October 24, 2022, the trial court entered a memorandum and

divorce decree adjudicating the parties' claims and issued an equitable distribution award granting 50% of the marital estate to Husband, and 50% of the marital estate to Wife. Trial Court Memorandum and Divorce Decree, 10/24/22, at *1-*4 (unpaginated). The trial court also awarded Wife alimony in the amount of $4,500.00 until she turned 65 years old. *Id*. This timely appeal followed.

Husband raises the following issues on appeal:[1]

_____

[1] Husband's statement of the questions involved on appeal is as follows:

1. The trial court erred and abused its discretion when it determined the date of separation to be April 19, 2020, even though Husband had manifested an intention to live separate and apart in July 2018, moved out of the marital residence, provided Wife with a written divorce settlement, and both parties had retained counsel prior to that date.

2. The court erred and abused its discretion in that the equitable distribution and alimony award does not achieve economic justice for Husband and failed to properly consider the equitable distribution factors at 23 [Pa.C.S.A.] § 3502 and the alimony factors at 23 Pa.C.S.A. § 3701[.]

3. The court erred and abused its discretion in calculating the marital debt and equity in the marital residence as of the date of separation and not the date of distribution, despite the fact that the court recognized that assets should be valued as of the date of distribution, that Husband continued to contribute to the mortgage payment, and that Husband was not awarded the fair rental market value while Wife had exclusive possession.

4. The court erred in assigning Husband the value of the Honda Civic, which was a lease and therefore not an asset owned by the parties during the marriage.

*(Footnote Continued Next Page)*

_____

5. The court erred in failing to consider certain advances, credits, and other debts attributable exclusively to Wife, including the $8,000[.00] borrowed by Wife from the parties' home equity line of credit, Wife's CostCo Credit Card debt, and Husband's contribution to the marital residence after separation.

6. The court erred in valuing Wife's Met Life Life Insurance policy at $76,196.31 rather than $89,093.76, as the evidence reflected.

7. The court erred and abused its discretion in its evaluation of Wife's earning capacity and in finding that Wife made sufficient efforts to find gainful employment commensurate with her earning capacity.

8. The court erred in failing to consider the relative value of the parties' retirement and investment accounts in its equitable distribution and alimony award, including the fact that Wife has far more separate property than Husband; that Wife had more opportunity to accumulate separate retirement savings than Husband; that Husband must spend his remaining income-earning years contributing the Wife's support, depriving Husband of the same opportunity to accumulate separate retirement savings as Wife had; that most of Wife's retirement savings are in secure and guaranteed investment vehicles while Husband's retirement accounts are dependent upon the market.

9. The court erred and abused its discretion in failing to consider Wife's substantial separate assets, including investment and retirement income which is available to her currently, in its calculation of her alimony.

10. The court erred in awarding Wife $4,500[.00] per month [in] alimony until the age of 65 based upon an inflated budget that was not supported by the evidence and that did not reflect Wife's actual needs and separate assets, Wife's ability to immediately access employment history and earning capacity, Wife's history of dissipation of assets, that uncertainty of Husband's income tax owed by Husband on Wife's alimony.

*(Footnote Continued Next Page)*

- 3 -

1. [Whether the trial court erred in determining that the parties' date of separation was April 19, 2020?]

2. [Whether the trial court erred in its equitable distribution award?]

3. [Whether the trial court abused its discretion in awarding Wife alimony?]

*See generally* Husband's Brief at 7-8.

In his first appellate issue, Husband claims the trial court erred in concluding that the parties separated on April 19, 2020. Husband's Brief at 16. This Court previously stated:

> "Our standard of review in divorce actions is well settled. [I]t is the responsibility of this [C]ourt to make a *de novo* evaluation of the record of the proceedings and to decide independently of the . . . [trial] court whether a legal cause of action in divorce exists." *Rich v. Acrivos*, 815 A.2d 1106, 1107 (Pa. Super. 2003) (quotation and quotation marks omitted). *See Thomas v. Thomas*, 483 A.2d 945 (Pa. Super. 1984). However, "in determining issues of credibility, the [trial court's] findings must be given the fullest consideration for it was the [trial court] who observed and heard the testimony and demeanor of various witnesses." *Jayne v. Jayne*, 663 A.2d 169, 172 (Pa. Super.

_____

Husband's Brief at 7-8. Undoubtedly, Husband's statement of questions involved utterly fails to comport with Pa.R.A.P. 2116's requirements as it is anything but concise. *See* Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in terms and circumstances but without unnecessary detail"); *see also id.* at cmt. (explaining that, while "the page limit for the statement of questions involved" was eliminated, "verbosity continues to be discouraged. The appellate courts strongly disfavor a statement that is not concise"). It is within this Court's power to quash an appeal for clear violation of our appellate rules. *See Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity*, 32 A.3d 800, 804 n.6 (Pa. Super. 2011) (*en banc*), *aff'd*, 91 A.3d 680 (Pa. 2014) (citations omitted). While we caution against the failure to abide by our appellate rules, we conclude that Husband's brief is not so defective as to hamper our review. *See id.* We will therefore consider Husband's claims on the merits.

1995) (quotation omitted). … When considering a challenge to the trial court's determination of the date of separation, we have applied the following standard:

> The Divorce Code defines 'separate and apart' as follows: 'Complete cessation of any and all cohabitation, whether living in the same residence or not.' 23 Pa.C.S.A. § 3103. In **Thomas**[, **supra**,] this [C]ourt held that 'cohabitation' means 'the mutual assumption of those rights and duties attendant to the relationship of husband and wife.' Thus, the gravamen of the phrase 'separate and apart' becomes the existence of separate lives not separate roofs. This position follows the trend of Pennsylvania case law in which a common residence is not a bar to showing that the parties live separate and apart.

> **Wellner v. Wellner**, 699 A.2d 1278, 1281 (Pa. Super.1997) (citations and quotations omitted). "The ties that bind two individuals in a marital relationship involve more than sexual intercourse." **Miller v. Miller**, 508 A.2d 550, 553 (Pa. Super. 1986) (citations, quotation, and quotation marks omitted).

**Frey v. Frey**, 821 A.2d 623, 627–628 (Pa. Super. 2003).

The trial court conducted a hearing to determine the date of separation. At the hearing, and currently on appeal, Husband argued that July 31, 2018 was the proper date of separation. Husband proffered the following evidence supporting his position: (1) On July 28, 2018, Husband informed Wife that he was leaving the marital residence; (2) Husband left the marital residence on July 31, 2018, and never resided there again; (3) Husband purchased a significant amount of furniture for his new residence in July 2018; (4) on August 1, 2018, Husband removed Wife from a Marriott credit card with Chase Bank and removed himself from a CostCo credit card with CitiBank; (5) Husband opened a checking and savings account in his name only at Dollar Bank; (6) in August 2018, Husband changed his registered address with his

employer to his new apartment address and removed all business files from the marital residence; and (6) approximately one month after Husband left the marital residence, he and Wife informed his parents as such. ***See*** Trial Court Memorandum Order, 2/23/22, at *2-*4 (unpaginated).

Wife, however, maintained that the parties did not separate until April 19, 2020. To support her proposed date of separation, Wife set forth the following evidence: (1) Husband did, in fact, leave the marital residence on July 31, 2018, but indicated it was temporary so that he could "miss [her]" and work on his "marital love;" (2) after Husband left the marital residence, the parties spent almost every weekend together and were sexually intimate during that time; (3) the parties celebrated Thanksgiving and Christmas together in 2018 and 2019; (4) for Christmas 2018, Husband gave Wife a "very romantic" Christmas card which was signed "Merry Christmas Sweet, Love You, Jim (Hubby);" (5) in July 2019, the parties traveled to Husband's son's wedding together, approximately 400 miles, and stayed together in a three bedroom rented house, with Husband and Wife sleeping in the same room, in the same bed; (6) at Husband's son's wedding, the two held themselves out to be Husband and Wife, with several photos showing Husband and Wife with their wedding rings on, and Husband's arm around Wife; (7) Husband and Wife went to a nice restaurant for Valentine's Day, 2020; (8) Husband and Wife celebrated their 20th wedding anniversary on March 4, 2020 and, on that day, Husband sent flowers to Wife with a note saying: "Happy Anniversary, Sweet. May the next 20 years be the best 20 years of

our life!  Love, Jim;" and, lastly, (9) a text message from Husband, to Wife, on July 25, 2020, "in response to Wife suggesting Husband may have a significant other" wherein Husband stated:

> Just friends, no relationship, no different [than] my guy friends here.  Did [not] know anyone here when we separated so it had nothing to do [with] that.  Plus you can see if I was interested in another girl then I would [not] have spent all the time together me and you in the past two years.  No dates, no Maryann situation, if I would have some girl I was interested in[,] I would [not] have just spent every holiday [with] you over the past two years.  I have guy friends and girls that are friends but none that I would spend the rest of my life with . . .

> Do [not] look for something that [is] not there as a solution.  You made mistakes, I made mistakes[,] and we grew apart however in the past two years I think you can see and feel that I tried to get it back by all the times we were together.

*Id*. at *4-*5 and *7 (unpaginated).

Upon review of the foregoing evidence, the trial court concluded:

> We first address [July 31, 2018 as a proposed date of separation for the parties]. As we have indicated above Husband was required to establish "an independent intent . . . to dissolve the marital union" and "the intent must be clearly manifested and communicated to the other spouse[.]"  *Sinha v. Sinha*, 526 A.2d 765, 767 (Pa. 1987).

> The actions by Husband leading up to July 31, 2018 can arguably show he had an independent intent to dissolve the marital union. He arranged for a new place to reside.  He changed the credit cards so that each spouse had their own card.  He established his work location at his new residence and he opened a bank account to deposit his work commission checks and told Wife he would deposit $9[,]000[.00] into the still joint bank account for her to pay certain living expenses including those regarding the marital home and health insurance for the parties and their children.

We however are not satisfied he met his burden of communicating that intent to Wife. She maintains he [temporarily left] the marital residence to work on his feelings for her and she believed they were going to be able to live together again.

The parties acted within what Wife believed [to be a continuing marital relationship] for the next almost two years. They had fairly frequent contact and engaged in [some form of] occasional] sexual intimacy. They walked together and kayaked together. They filed their income tax returns together using the marital residence address. We recognize Husband maintains that was done for financial benefit of the parties but in the context of everything else we find it was an indication they were still a [married] couple.

At the wedding in July[] 2019[,] there are photos of the couple which show touching and affection beyond what might be expected of a separated couple trying to act civil at a child's wedding. Three of the photos are just of the couple with the Husband's arm around the Wife and with their wedding rings on in all photos. Husband maintains he wore his ring to make Wife and his son happy but he appears to be quite happy with Wife in the photos.

The parties continued to act as a couple at major [family holiday] functions and Wife even had a family 50th birthday party for Husband at Thanksgiving in 2018. Further, in late 2019 or early 2020 when Wife borrowed money from her cousin[,] that cousin called Husband and then first learned the parties were separated.

Further[,] while Husband maintains in March of 2019 the parties went to look at a house [just for Wife,] the customers were listed as ["both"] suggesting they were still acting as Husband and Wife.

Other evidence suggests Husband did not communicate to Wife his independent intent to dissolve the marital union [i]f [he harbored] such an intent. His first apartment lease had a fairly reasonable buyout[, of] which Wife was aware[.]

Further[,] the Christmas card th[at] Husband sent to Wife for Christmas 2018 (we accept Wife's testimony as to the date of that card) was very romantic and loving. Further[,] the message with the flowers Husband sent Wife for their

anniversary in March of 2020 suggested they would spend the next 20 years together and they enjoyed an anniversary dinner together.

Also, they spent what we determine to be a romantic Valentine's Day in 2020 with a nice dinner after Wife received [two] dozen red roses from Husband. We reject that the dinner was a business dinner that happened to be on Valentine's Day. That just does not make sense.

Finally, perhaps the most telling evidence was the text sent by Husband to Wife on July 25, 2020. While that was after even the Wife's proposed date of separation[,] it strongly suggests Husband intended to work on their relationship rather than move on with finding another relationship.

Thus[,] we cannot find Husband has met his burden of establishing July 31, 2018 as the date of separation.

At first glance one would conclude that September 11, 2019[,] or within weeks after that would be the date of separation since Husband had his attorney send a proposal for the distribution of the parties['] assets as part of a divorce. Wife reacted by getting counsel and it seemed that things might move in the direction of divorce[, a clearly-expressed and formalized cessation of cohabitation, and the commencement of fully separate lives].

But for several of the same reasons we indicated above[,] that [arrangement was set] aside and they continued to act like a couple still moving forward in repairing their relationship until April 19, 2020.

We cannot find that Husband has proven what is required for a clear separation before April 19, 2020.

Therefore[,] it is ordered and directed that the date of separation of these parties is April 19, 2020.

*Id.* at *8-*10 (parallel citation omitted). We have reviewed the testimony and conclude that the trial court's opinion is supported by the record. We therefore decern no abuse of discretion.

In his second appellate issue, Husband raises several challenges to the trial court's equitable distribution order.

> We review an equitable distribution order for an abuse of discretion.
>
> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Reber v. Reiss*, 42 A.3d 1131, 1134 (Pa. Super. 2012), *appeal denied*, 62 A.3d 380 (Pa. 2012) (citations omitted). Similarly, "[o]ur scope of review requires us to measure the circumstances of the case against the objective of effectuating economic justice between the parties in discerning whether the trial court misapplied the law or failed to follow proper legal procedure." *Gates v. Gates*, 933 A.2d 102, 105 (Pa. Super. 2007) (citation omitted).

First, Husband claims the trial court abused its discretion in valuing the marital residence and calculating the marital debt and equity in the marital residence. Husband's Brief at 29. In particular, Husband claims that the trial court valued the marital residence, as well as the marital debt and equity in

the residence (the mortgage and home equity line of credit ("HELOC")), as of the date of separation, not the date of distribution.  ***Id.***  In addition, Husband argues that, in using the date of separation, rather than the date of distribution, the trial court failed to consider other factors, including Husband's contribution to the debt and equity of the marital residence from July 2018 until the date of distribution when he no longer resided there.  ***Id.*** at 29-33.

This Court previously explained:

> The Pennsylvania Divorce Code does not specify what date marital property should be valued for purposes of equitable distribution.  Although the Code establishes the date of separation as the demarcation point to identify marital property, it does not specify the time when marital assets must be valued. Absent a specific guideline, trial courts are given discretion to choose a date of valuation which best provides for "economic justice" between the parties. ***Miller v. Miller***, 577 A.2d 205, 209 (Pa. Super. 1990).  "To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice." ***Sergi v. Sergi***, 506 A.2d 928, 932 (Pa. Super. 1986). However, "equitable results will most likely flow from providing the court with the most recent information available[.]" ***Id.***

> The Supreme Court of Pennsylvania agreed with the analysis in ***Sergi*** and held:

>> It is implicit, however, in the statutory provisions governing equitable distribution that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized.

> ***Sutliff*** [***v. Sutliff***, 543 A.2d 534, 536 (Pa. 1988)].

> Despite a preference for valuing marital assets at or near the time of distribution, there may be circumstances where it is more appropriate to value marital assets as of the date of separation.  ***Naddeo v. Naddeo***, 626 A.2d 608, 611 (Pa. Super. 1993).  For example, in situations where one spouse consumes or disposes of marital assets following separation

without the other spouse's consent, it may be more equitable to value the marital asset as of the date of separation. *See Sutliff, supra*[.] Likewise, when valuing a closely held business which is largely controlled by one spouse during the period of separation, it may be appropriate to value the business as of the date of separation. *See Benson v. Benson*, 624 A.2d 644 (Pa. Super. 1993); *McNaughton v. McNaughton*, 603 A.2d 646 (Pa. super. 1992).

*Smith v. Smith*, 653 A.2d 1259, 1270–1271 (Pa. Super. 1995) (internal citations omitted).

We first address Husband's challenge to the trial court's valuation of the marital residence. In its distribution order, the trial court detailed its valuation scheme as follows:

The June 6, 2021 appraisal of the marital home valued it at $650,000[.00]. Husband provided some comparable sales when he testified in July[] 2022[,] which caused him to opine that the marital residence was now worth at least $699,000[.00].

***

Clearly the price of real estate increased since the June[] 2021 appraisal of the marital home and the husband's estimate of $699,000[.00] was not unreasonable in July[] 2022. But now in October[] 2022 **when distribution will be occurring** we can certainly take judicial notice that the real estate market has changed substantially with inflation like we have not seen for decades raising 30[-]year mortgage interest rates well above [six percent] and moving the market to more of a buyer's market.

Thus, while the marital residence is worth more than it was in June[] 2021, it is not worth $699,000[.00]. We conclude the value of the marital home **at this time** to be $675,000[.00].

Trial Court Memorandum and Divorce Decree, 10/24/22, at *6-*7 (unpaginated) (emphasis added). Contrary to Husband's argument on appeal,

the trial court valued the marital residence as of the date of distribution, not the date of separation. Thus, Husband's claim of error is belied by the record.

We now turn to the trial court's valuation of the debt and equity attached to the marital residence, namely, the mortgage and HELOC. The trial court's distribution order states:

> The balance on the PNC mortgage on May 15, 2020 (just after the date of separation) was $177,839.70. Husband indicated that the current mortgage balance is $117,866[.00,] which could be correct if most of the monthly mortgage payment of $2,647.74 has been going toward the principal. However, we must keep in mind [that] during that time, with the exception of the extra $638[.00] payment made by Husband, Wife was paying the mortgage down with her income from earnings and [alimony pendente lite ("APL")] due to her. Thus, the debt will be attributed to her at the [time-of-separation] balance.
>
> The PNC HELOC [] had a balance of $76,569.59 on January 21, 2022. It appears that because of overdrafts from Wife as she was not making ends meet with her earnings and APL[,] the HELOC balance remained around $76,000[.00]. We will therefore attribute the debt to her in the equitable distribution.
>
> While we realize only part of the $638[.00] a month paid by Husband would have reduced the principal on the mortgage[,] we will credit him with 18 months of that amount or $11,484[.00] for essentially an advance payment on the joint debt to the benefit of both parties since he did so [while] residing at the marital residence.
>
> We will not give Husband credit for the fair rental value of the marital home from the date of separation. Husband left the home in July[] 2018 and[,] from the date of separation [on,] Wife kept the payments made on the marital home debt, and for real estate taxes and insurance. Consistent with the testimony of Husband[,] we have found that there was some increase in value of the marital home even from the 2021 appraisal until now. Thus, under Wife's watch the joint asset increased in value which benefits both parties in equitable distribution.

- 13 -

***Id.*** at \*11-\*12 (unpaginated).

In this instance, the trial court determined that the parties' mortgage loan and HELOC should be valued as of the date of separation, rather than the date of distribution, because Wife remained in the marital residence, she was solely responsible for paying the mortgage and HELOC, and, under her watch, the marital residence increased in value. This it was entitled to do. ***See Smith***, 653 A.2d at 1271. Hence, in asking this Court to overturn the trial court's determination, Husband, in essence, is seeking to obtain credit for the APL he paid Wife. ***See*** Husband's Brief at 31-32 (stating that the trial court "ignored Husband's contribution to the mortgage and the fact that Husband was unable to reside in the home and was forced to pay for a separate residence pending trial. While Wife was responsible for paying the mortgage as she occupied the residence, she paid for it out of the tax-free support, including the upward mortgage deviation, that Husband was ordered to pay her out of his separate, post-separation income."). Husband lodges this request even though the trial court awarded him credit for the additional $638.00 per month contribution he made as part of the parties' APL order, totaling $11,484.00. Husband's demand is, undoubtedly, contrary to the purpose of APL. ***See Melton v. Melton***, 831 A.2d 646, 655 (Pa. Super. 2003) (holding that the appellant was not entitled to a "dollar-for-dollar credit at equitable distribution for APL payments" because such an order "would have effectively thwarted the purpose of granting APL in the first place" and "not effectuate economic justice."). We therefore conclude that the trial court did

not err in valuing the marital residence's mortgage and HELOC as of the date of separation, as opposed to the date of distribution.

Second, Husband contends the trial court erred in "assigning [him] the value of the Honda Civic, totaling $19,687.00." Husband's Brief at 34. Husband claims that the Honda Civic was leased by the parties in 2020, not owned by them. *Id.* Upon review, we discern no abuse of discretion.

Herein, Husband testified that the Honda Civic was, in fact, a lease at the time of separation. *See* N.T. Trial, 7/26/22, at 193. At the same time, however, Husband admitted that he "bought out the lease." *Id.* The issue, therefore, was when Husband did so. At trial, Wife introduced into evidence the parties jointly filed 2019 tax return, which listed two vehicles, a 2019 Volvo XC90 and the 2018 Honda Civic. N.T. Trial, 4/6/22, at 93. On the tax return, the 2019 Volvo XC90 is clearly held under a lease. *Id.* at 94. The Honda Civic is not. *Id.* In addition, at trial, Wife testified that Husband, at some point, bought out the lease for the Honda Civic, but she did not know the exact date. *Id.* at 95. Thus, the trial court considered the 2019 tax return as evidence that Husband bought out the lease of the Honda Civic in 2019 and prior to the date of separation. The trial court's decision to include the Honda Civic in its distribution award is therefore factually supported and not an abuse of discretion.

Third, Husband argues that the trial court erred in failing to consider "certain advances, credits, and other debts incurred or received solely by Wife, for Wife's sole benefit," as a part of the marital estate. Husband's Brief at 34.

In particular, Husband points to the following: "[funds] borrowed by Wife against a [MetLife Whole] Life Insurance Policy, the loans taken by Wife from the parties' [HELOC, and] Wife's CostCo Credit Card debt." *Id.*

Upon review, we conclude Husband's claim lacks merit. In sum, Husband asks this Court to re-weigh the trial court factual assessments and attribute additional debt to Wife. Husband, however, misinterprets the role of the trial court and, currently, this Court, which is to consider the economic distribution award as a whole and determine whether it "effectuate[s] economic justice between the parties and achieve[s] a just determination of property rights." *Reber*, 42 A.3d at 1134. In its distribution order, the trial court attributed a $313,946.59 of marital debt to Wife, and only $3,647.12 to Husband. In view of this difference, it cannot be said that the trial court's decision not to attribute an additional $35,000.00 of debt to Wife amounts to an abuse of discretion.

Fourth, Husband claims that the trial court incorrectly valued Wife's MetLife Whole Life Insurance Policy. Husband's Brief at 39. Husband contends that Wife "should have been credited with having received the full value - $97,087[.00]," not $76,196.31. *Id.* at 39-40.

The trial court relied upon Wife's Exhibit Q to calculate the value of Wife's MetLife Whole Life Insurance Policy, which reflected, as of April 19, 2020, a net cash value of $88,962.86. *See* Trial Court Memorandum and Divorce Decree, 10/24/22, at *8 (unpaginated). There was evidence, however, that Wife's pre-marital portion of the policy totaled $12,766.55. *Id.*

- 16 -

The trial court then subtracted Wife's pre-marital portion ($12,766.55) from the net cash value amount ($88,962.86) and concluded that the value of the policy was $76,196.31. Our own review confirms the court's assessment. Hence, no relief is due on this claim.

Fifth, Husband claims that the trial court abused its discretion in evaluating Wife's earning capacity. Husband's Brief at 41. Husband argues that, in light of Wife's experience and training, "Wife should [be] able to find a job as an administrative assistant making at least $50,000[.00] per year." *Id.* Husband further contends that Wife made "no effort to find a job that is commensurate with her education and experience during the parties' separation." *Id.*

With respect to Wife's earning capacity, the trial court stated:

[W]e note that Wife was born on April 20, 1962 and is therefore [60-years-old]. Husband was born on November 22, 1968 and therefore will be [54-years-old] next month.

***

As for their respective earnings[,] Husband's income has been consistently $18[,]000[.00] or $19[,]000[.00] net a month from his employment as a financial planner and with some unemployment compensation during the [COVID-19] pandemic. He first worked for MetLife where Wife worked for years prior to him and at the end of 2009[,] they both started their own financial planning business affiliated with a company as "1099 employees." Wife retired from the business to care for the children (the parties['] daughter was 14 years old] at the time) and Husband indicated also because in his opinion she was not really working that much and he was concerned that it would be a problem if the business was audited by the company with which they were affiliated. … Wife gave her "book" of business (existing clients) to her Husband at the time of her retirement[.]

- 17 -

*** 

It does not appear to be disputed by Husband that it would be difficult for Wife to again become a financial planner at her current age since she gave up all of her licenses in 2015 when the parties agreed she would retire from the business and even if she had the necessary licenses[,] she would have to build her book of business back up again. [Husband], however, believes she can find employment in the financial industry as an administrative assistant earning around $50,000[.00] a year. We are satisfied[,] however,] that [Wife] has tried to explore that option unsuccessfully and her current employment netting about $1[,]860[.00] a month is consistent with her earning capacity.

Essentially, [Wife's] skills were as a financial planner all of her adult working life until 2015 and she is probably fortunate to have obtained the employment she has since the parties separated.

Trial Court Memorandum and Divorce Decree, 10/24/22, at *2-*3 (unpaginated). We discern no grounds for granting relief on Husband's claim. The records supports the trial court's findings and its conclusions are consistent with the objective of achieving economic justice between the parties. Husband again asks us to re-weigh the facts placed before the court, which we are not inclined to do. For each of these reasons, Husband's claim fails.

Finally, Husband argues that the trial court "failed to consider the relative value of the parties' retirement and investment accounts in its equitable distribution award," resulting in "Wife's financial situation [following distribution being] far superior to Husbands." Husband's Brief at 43-44. We disagree.

In issuing its equitable distribution award, the trial court specifically noted that "Husband's income has been consistently around $18[,]000[.00] or $19[,]000[.00] net a month" while Wife's income nets only $1,860.00 per month. Trial Court Memorandum and Divorce Decree, 10/24/22, at *2 (unpaginated). The trial court also noted that Husband continues to have "substantial cash available" as he recently paid a downpayment and closing costs to purchase a nearly $400,000.00 townhouse. *Id.* at *16-*17. In addition, the trial court found that, unlike Wife, Husband was "in a position to continue to have significant income to acquire [] assets and earn significant income based on his income history." *Id.* at *4. Based upon the foregoing, the trial court stated:

> When we consider all these factors it would appear at first glance that Husband has a clear economic advantage. Husband will most likely be able to grow his assets and increase his retirement benefits while Wife will not be able to grow her assets and her only new retirement contribution will be through her employment and therefore somewhat limited.
>
> However, Wife has available non-marital assets [by way of retirement and investment accounts] of $269,122.38 and Husband has only $36,597.36 of non-marital assets.
>
> Secondly, we will be awarding the marital home to Wife which is tax free compared to the bulk of Huband's distributed assets being retirement assets that are taxable at least for federal tax purposes.
>
> We therefore will distribute the marital property on a 50%-50% basis.

*Id.* at *5-6. Hence, contrary to Husband's claims, the trial court specifically considered Wife's non-marital assets in crafting its distribution award and

found that, because of Husband's current income, as well as his potential to acquire significantly more income (including the amount of the sale of his business, Spectrum Financial Planning Group, upon retirement, for which Wife made no claim), the fact that Wife owned a substantial amount of non-marital assets "equalized the distribution of marital assets." **Id.** at *6. We discern no abuse of discretion in the trial court's determination.

In his last appellate issue, Husband challenges the trial court's decision to award Wife alimony. Husband's Brief at 48-63. Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion.

> We previously have explained that "[t]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." Alimony "is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." Moreover, "[a]limony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill."

**Teodorski v. Teodorski**, 857 A.2d 194, 200 (Pa. Super. 2004) (citation omitted); *citing* **Moran v. Moran**, 839 A.2d 1091, 1096-1097 (Pa. Super. 2003).

In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court must

consider numerous factors as set forth at 23 Pa.C.S.A. § 3701. Specifically, pursuant to section 3701:

> **(a) General rule.**—Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.
>
> **(b) Factors relevant**.—In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:
>
> > (1) The relative earnings and earning capacities of the parties.
> >
> > (2) The ages and the physical, mental and emotional conditions of the parties.
> >
> > (3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
> >
> > (4) The expectancies and inheritances of the parties.
> >
> > (5) The duration of the marriage.
> >
> > (6) The contribution by one party to the education, training or increased earning power of the other party.
> >
> > (7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.
> >
> > (8) The standard of living of the parties established during the marriage.
> >
> > (9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.
> >
> > (10) The relative assets and liabilities of the parties.
> >
> > (11) The property brought to the marriage by either party.
> >
> > (12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(a) & (b).

As stated above, the trial court distributed the marital estate on a 50%-50% basis. The trial court, however, recognized that the basis for its decision to issue such an award, *i.e.*, Wife's non-marital assets, would "not fairly provide income to her now" and reviewed Wife's demand for alimony in light of this conclusion. Trial Court Memorandum and Divorce Decree, 10/24/22, at *6 (unpaginated). The trial court then considered all of the statutory factors at Section 3701. **Id**. at *12-16. Of chief importance to the trial court was that: (1) Husband's earning capacity was significantly higher than Wife's; (2) Husband's income was substantially more than Wife's; (3) the fact that Wife contributed to Husband's earning capacity when she retired from the financial planning business and transferred her book of business to

Husband without return consideration; (4) the parties' upper middle class lifestyle established during their marriage; (5) Wife's pre-marital assets were not liquid until she turned 65-years-old; and (6) Wife's incapability of self-support through appropriate employment. *Id.* Based upon the foregoing, the trial court determined that Wife should receive alimony in the amount of $4,500.00 per month until she turned 65 because, at that time, Wife "reasonably has income from [her] retirement accounts." *Id.* at *16. We discern no abuse of discretion or error of law.

Overall, the trial court achieved economic justice between the parties and justly determined their property rights.

Order and decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/4/2023